LILY F. AIKEN, Appellant, v. WABASH RAILROAD
COMPANY, Respondent.

### St. Louis Court of Appeals, April 18, 1899.

1. **Common Carriers:** PASSENGER'S TICKET: CONTRACT: PRESUMP-
TION.  In the case at bar the evidence and exhibits show that the
condition relied upon by the respondent appeared in plain print upon
the face of the ticket and as part of it; held, that the ticket repre-
sents the contract of transportation between the appellant and the
respondent; and, held, further, that viewing the ticket as a contract,
the presumption obtains, as in all other contracts, that appellant
read or was advised of its conditions and assented thereto.

2. ———: ———: ———: ———: AGENT.  In the case at bar it is
held that in receiving the plaintiff's baggage at Buffalo for further
transportation the defendant acted as the agent of the West Shore
Railroad Company and as such agent is entitled to claim the benefit
of any part of the original contract of shipment.

*Appeal from the St. Louis City Circuit Court.*—HON.
HORATIO D. WOOD, Judge.

AFFIRMED.

W. PALMER CLARKSON for appellant.

The agreed statement of facts in a cause upon which it
is to be determined occupies the same footing and stands in
lieu of a special verdict, and the court pronounces its con-
clusions upon such agreed facts precisely as if a jury had
found a verdict in that form.   Gage v. Gates, 62 Mo. 412;
Carr v. Lewis Coal Co., 96 Mo. 149: Field v. Railway, 21
Mo. App. 600; Smith v. Railroad, 47 Mo App. 546.   The
appellate court has power, without ordering a new trial, to
direct a different judgment on an agreed statement from that
pronounced in the trial court.   Land Co. v. Hays, 105 Mo.
143; Land Co. v. Combs, 53 Mo. App. 298.  The "condition"

must be strictly construed in favor of the passenger. Earle v. Cadmus, 2 Daly 237; Hopkins v. Wescott, 6 Blatch. (U. S.) 764. The connecting carrier of passengers is not entitled to claim the benefits of limitations imposed by the initial or contracting carrier, except where the contract is a through contract, and the connecting carrier acts as the agent of the initial carrier in carrying out the contract. Lawson on Carriers, sec. 244. The same rule, as to the liability of connecting carriers, does not obtain as to a passenger ticket, as applies to a bill of lading; the latter is understood by the shipper to be a regular commercial contract, the former to be simply a voucher. Mauritz v. Railroad, 25 Fed. Rep. 765, 768, 769. To become binding upon the passenger he must be shown to have knowledge of the imposition of conditions contained in the ticket. Mauritz v. Railroad, 23 Fed. Rep. 765, and cases cited; also note p. 780. See, also, Railroad v. Campbell, 36 Ohio St. 647; Lawson on Carriers, secs. 106, 107; Wilson v. Railroad, 21 Gratt. (W. Va.) 654; Blossom v. Dodd, 43 N. Y. 263; Railway v. Fraloff, 100 U. S. 24; The Majestic, 166 U. S. 375. A stipulation, even in a written contract of shipment, placing a limited valuation on the property shipped in a case of loss, is not binding on the shipper when not made in consideration of a special or reduced rate. Kellerman v. Railroad, 136 Mo. 477, and Missouri cases cited, p. 193.

GEORGE S. GROVER for respondent.

The ticket in question is a special contract, and the conditions of carriage as expressed in it are valid. 2 Fetter on Carriers of Passengers, p. 981; 4 Elliott on Railroads, p. 2484; Muldoun v. Railroad, 10 Wash 31; Steers v. Liverpool Co., 57 N. Y. 1; Majestic Case, 60 Fed. Rep. 624. These conditions bind the plaintiff, whether she ever read or understood them or not. In the absence of fraud or mistake, and no

charge of either is made here, she is presumed to have assented to the terms expressed in said contract. O'Brien v. Kinney, 74 Mo. 125; Railroad v. Cleary, 77 Mo. 634. The contract as expressed in the ticket, being for the transportation over the lines of the initial carrier and its connections, the defendant, the last carrier, is entitled to claim all the benefits of such agreement. Halliday v. Railroad, 74 Mo. 159; McCann v. Eddy, 133 Mo. 59. Such a contract, supported as it is here, by a reduced rate, is valid. Hart v. Railroad, 112 U. S. 331. The plaintiff after accepting all the benefits of this contract, will not be permitted to escape or repudiate its burdens. Estes v. Reynolds, 75 Mo. 565; Mulligan v. Railroad, 36 Iowa 191; Elliott on Railroads, p. 2322. This action having been instituted here, to be determined here, is governed by the laws of Missouri. Chemical Co. v. Lackawanna Line, 70 Mo. App. 274.

BIGGS, J.—The plaintiff sues the defendant for $1,200, the alleged value of baggage contained in two trunks. In February, 1898, the plaintiff was in Greenfield, Massachusetts. She held a pass over the Fitchburg Railroad from Greenfield to Rotterdam Junction in the state of New York. The West Shore Railroad Company owned and operated a railroad from Rotterdam Junction to the city of Buffalo, New York. The defendant operated a railroad from Buffalo to the city of St. Louis. At the time mentioned the husband of the plaintiff applied at the office of the defendant in St. Louis for the purchase of a ticket for her from Rotterdam Junction to St. Louis. The matter was referred to the New York office of the West Shore Company. That company issued the ticket with coupons attached. The ticket provided for through passage from Rotterdam Junction to St. Louis. The coupon from Buffalo to East St. Louis read, "on account of the Wabash Railroad Co." The coupon from East St. Louis to St. Louis was issued "on account of Terminal R. R.

Association of St. Louis." There was printed on the face of the ticket the following conditions, among others, to wit: "5th.     That in checking baggage over other lines this company assumes no responsibility beyond its own road and limits its liability to wearing apparel not exceeding $100 in value." The cause was submitted to the court on the following agreed statement of facts:

1.    "The plaintiff claims in this action the sum of $1,200, the value of certain baggage belonging to her and in her two trunks, on the 4th day of February, 1898, while she was traveling as a passenger on defendant's railroad, as hereinafter mentioned, part of which baggage consisted of wearing apparel, worth in excess of one hundred dollars.

2.    "That said trunks and said contents were received by defendant on or about the 4th day of February, 1898, at Buffalo, New York, on one of its trains on which plaintiff was a passenger over the railroad of defendant, extending from Buffalo, New York, to St. Louis, Missouri, which railroad defendant operates as a common carrier of passengers.

AGREED statement of facts.

3.    "That plaintiff traveled in a through sleeper from Greenfield, Massachusetts, to Rotterdam Junction, in the state of New York, and from thence to Buffalo, New York, over the West Shore Railroad, and from thence to St. Louis over the defendant's line of railroad.

4.    "That plaintiff traveled on a free pass from Greenfield, Massachusetts, to Rotterdam Junction, New York, and from Rotterdam Junction to her said destination she traveled on a ticket, a true copy of which is attached to and made a part of this stipulation, and marked Exhibit "A."

5.    "That plaintiff's trunks were checked through from Greenfield, Massachusetts, to St. Louis, Missouri, over the West Shore Railroad and the railroad of the defendant.

6.    "That plaintiff purchased said ticket through her husband W. F. Aiken, through the St. Louis office of the

defendant at a cost of $20.75, and that said W. F. Aiken caused to be mailed said ticket to the plaintiff through the New York office of the West Shore Railroad to Greenfield, Massachusetts.

7. "That plaintiff accepted and used said ticket, presenting it a number of times to the various conductors on the West Shore Railroad and the railroad of the defendant, between Rotterdam Junction, New York, and St. Louis, Missouri, and had then and there full and ample opportunity to acquaint herself with the contents thereof, as well as the first, second, third, fourth and fifth clauses of said ticket, as shown by said Exhibit "A," but as a matter of fact she did not read the said ticket, and had no knowledge of the contents thereof or conditions contained thereon.

8. "That the West Shore Railroad had on the 4th day of February, 1898, on file in its office at said Rotterdam Junction station, as required by the laws of congress then in force, a schedule of rates printed, published, and subject to public inspection, as required by the laws of the United States then in force, a true copy of which schedule is hereto attached and marked Exhibit "B."

9. "That at said Rotterdam Junction at said time, said West Shore Railroad then had two rates for passengers on its passenger trains between said Rotterdam Junction and St. Louis, Missouri, as follows, to wit:

"A. That it then and there had on sale for the price and sum of $26.09, between said points, which was known as its unlimited ticket, containing no conditions, a true copy of which is hereto attached and marked Exhibit "C."

"B. That it also had at said time and place tickets or special contracts on sale, such as were purchased by plaintiff's husband, as hereinbefore stated, a true copy of which is hereto attached and marked Exhibit "A," as before stated, which was then and there advertised and sold at a reduced rate, to wit, the sum of $20.75, conditioned upon the

acceptance and using of said ticket by the passenger purchasing it.

10. "That when plaintiff caused to be presented her trunks to the baggage master at Greenfield, Mass., she also caused to be presented to him at said time and place said ticket hereto attached, and marked Exhibit "A," as evidence of her right to ride upon said railroad and its connecting lines, and that after presentation of said ticket plaintiff's trunks were checked through from Greenfield, Mass., to St. Louis, as aforesaid.

11. "That while said trunks, containing the property hereinbefore described, were en route over the railroad of the defendant, in the Dominion of Canada, between Buffalo, N. Y., and Detroit, in the state of Michigan, the baggage car, in which the said trunks were located, was destroyed by fire, and the said trunks and their contents were then and there destroyed.

12. "That said car was then and there in first-class condition, and properly protected from fire and sparks alighting upon said car from the outside by all the best known appliances then in use on railroads in the United States and in Canada, and that defendant's engines were then and there equipped with the best known appliances for the preservation of the escape of sparks from said engine; that said engine and appliances were then and there in good order and manned by competent, careful and skillful engineers.

13. "That said fire was caused solely by the spontaneous combustion of dynamite, nitro-glycerine and other highly explosive materials, then and there concealed in the baggage of other passengers then on defendant's train en route to the Klondike, said baggage being then and there transported by defendant in the same car with the trunks of the plaintiff.

STATEMENT.

14. "That said trunks belonging to other passengers, so containing said explosive materials as aforesaid, had been

checked by the defendant as baggage, and such explosive and dangerous materials were then and there concealed in the said trunk or trunks by said passengers without either the knowledge or consent of the defendant.

15. "That the defendant would not have transported the said trunk or trunks containing said explosive material as aforesaid under any circumstances or upon any conditions in its baggage car or otherwise, as baggage or freight on its trains as aforesaid, had it known of the presence of said explosive materials."

The circuit court rendered a judgment against the defendant for $100. The plaintiff has appealed and urges that under the law as applicable to the agreed facts she was entitled to a judgment for the value of her property.

The ticket in question purports on its face to limit the liability of the West Shore Railroad Company to one hundred dollars in case the baggage of the plaintiff should be damaged, destroyed or lost in transit over its line of road. The legal questions involved as we conceive them are (1) as to the conditions upon which a carrier of baggage may limit its common law liability; (2) the conditions necessary to bind the passenger by such a limitation; and (3) when the contract is made by the initial carrier under what circumstances may a connecting carrier avail itself of the limitation when the loss occurs on its line.

As to the baggage of a passenger the carrier is an insurer and his relations and obligations to it are the same as are imposed by law on him in the transportation of other merchandise. It is settled in this state that a carrier of goods may, where his own negligence is not a cause or concurring cause of the loss, limit his liability in case of damage or destruction of goods while en route. There must, however, be a special contract to this effect, and under the law of this state it must be supported by an independent consideration. The appellant here does not controvert this

statement of the rule, but she asserts that under the agreed facts there was no special contract as to baggage between her and the West Shore Railroad Company. The authorities bearing on this question are by no means harmonious. The cases all agree that an ordinary railroad ticket, which contains merely the names of the stations, is a receipt or voucher and can not be said to be a contract nor to contain a contract. It is merely evidence that the holder has paid the amount of the fare between the two stations. Logan v. Railroad, 77 Mo. 663; Thompson on Carriers, p. 65; 4 Elliott on Railroads, p. 2482. The authorities are also unanimous in holding that a railroad company may, by a special contract with the passenger, limit its liability as to amount in the carriage of baggage, or the parties may agree on an amount certain as liquidated damages in case of loss, etc. The cases, however, differ as to the quantum of evidence necessary to establish such a contract. With but few exceptions the decisions are to the effect that in the purchase of a railroad ticket under circumstances, the passenger is not bound by conditions printed on the back of his ticket, unless the railroad company shows that he read them, or that his attention was called directly to them. It will not be presumed that he read them. Perkins v. Railroad, 24 N. Y. 196; Malone v. Railroad, 12 Gray 388; Brown v. Railroad, 11 Cush. 97; 2 Fetter on Carriers of Passengers, bottom page 980; Fonseca v. Steamship Co., 153 Mass. 553; Railroad v. Cox, 29 Ind. 359. But in some states the rule is otherwise where the ticket on its face directs attention to the printed matter on its back (Quinby v. Railroad, 150 Mass. 365), or where the purchase of such a ticket is made under circumstances leading to the conclusion that the purchaser did read the conditions and assented to them. (Patton v. Majestic, 60 Fed. Rep. 624; Rawson v. Railroad, 48 N. Y. 212.) A contrary rule, however, has been asserted in other states, where it is held that the railroad company must affirmatively show that

the holder of such a ticket either read the conditions before commencing the journey, or that he had his attention called directly to them. Malone v. Railroad, *supra;* Brown v. Railroad, *supra;* Railroad v. Cox, *supra.* In all of the foregoing cases the ticket is regarded only as evidence that the passenger has paid his fare. The actual terms of the contract are outside of the ticket and are implied by law. It is for this reason that the courts require affirmative evidence of the assent of the passengers to conditions printed on the back of the ticket. The modern decisions, however, hold to the doctrine that a railroad ticket may be both a receipt and a contract. In other words, it may be so framed and worded as to justify the conclusion that it was intended to represent the entire contract of transportation. Thus if certain limitations or conditions are plainly printed on the face of the ticket and as a part thereof, the law will draw the inference that the passenger read the conditions and assented to them as part of his contract. 4 Elliott on Railroads, p. 2482, note 1 and authorities cited; Brown v. Railroad, *supra;* Fonseca v. Steamship Co., *supra;* Zunz v. Railway, L. R., 4 Q. B. 539; 2 Fetter on Carriers, bottom page, 980, 981. We can see no valid objection to this view. It is reasonable and just and we are inclined to adopt it. The evidence and exhibits in the case at bar show that the condition relied upon by the respondent appeared in plain print on the face of the ticket and as part of it. We therefore hold that the ticket represents the contract of transportation between the appellant and the West Shore Railroad Company. Viewing the ticket as a contract the presumption obtains, as in other

PRESUMPTION.

contracts, that plaintiff read or was advised of its conditions and assented thereto. As the agreed statement of facts shows that the West Shore Railroad Company had two rates from Rotterdam Junction to St. Louis, the greater for $26.09 for an unlimited and unconditional ticket, and the other for $20.75

for a conditional ticket and as appellant purchased the cheaper ticket it is clear that the special contract is supported by a valuable consideration.

We have disposed of two of the propositions stated, that is that the printed conditions on the face of the ticket were part of the contract, that thereby the liability of the West Shore Railroad Company for loss of baggage was limited to $100, and that this special contract was founded on a valuable consideration. Is the limitation in the contract available to the respondent as a connecting carrier? Under the authority of Halliday v. Railroad, 74 Mo. 159, this question must likewise be decided adversely to the appellant. In that case the receiver of the Missouri, Kansas and Texas Railroad Company entered into a through contract of shipment over its own line, in connection with the defendant's road, from Madison Station to the city of St. Louis. The contract contained limitations in favor of the initial carrier. The defendant (the connecting carrier) was sued for damage to the stock, and it sought to take advantage of the limitation. On this point the supreme court said: "By simply accepting the stock from the receiver to be transported to St. Louis the defendant became entitled to claim all the benefits of all valid exceptions he made with the shipper." So in the case of McCann v. Eddy, 133 Mo. 59, the contract was from Stoutsville, Missouri, to Chicago, Illinois, and the initial carrier limited the liability to his own line. The loss occurred on the line of a connecting carrier. In a suit against the defendant (the initial carrier) he pleaded his contract in bar of the action. The defense was rejected upon the theory that in completing the shipment the connecting carrier acted as the agent of the defendant. Applying the rule to this case we must hold that in receiving the plaintiff's baggage at Buffalo for further transportation the defendant acted as the agent of the West Shore Railroad Company,

and as such agent is entitled to claim the benefit of any part of the original contract of shipment. It can only be held to the extent that the West Shore Railroad Company could have been held had it been sued. These cases are conclusive. There can be no question that the ticket purchased by the plaintiff was a through ticket, as the West Shore Railroad Company agreed to carry her from Rotterdam Junction to St. Louis over its own road and connecting lines.

Our conclusion is that the judgment of the circuit court on the agreed statement of facts is right and it will be affirmed. All concur.