ANDREW J. MEYERS, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 1, 1906.

1. **PLEADING: Contract: Joint and Several: Statute: Proof.** A cause alleged to be based on a joint and several contract cannot be sustained by proof of a cause founded on the separate contract of one of the alleged joint promisors notwithstanding the provisions of section 892, Revised Statutes 1899.

2. **COMMON CARRIERS: Joint and Several Contract: Connecting Carrier: Agent.** A carrier contracting to deliver goods at their destination beyond its lines cannot relieve itself from liability for the damage resulting from the acts of a connecting carrier; and the connecting carrier's receipt establishes a contractual relation between it and the shipper so that the latter may maintain an action on the contract against it though the carriers are not joint contractors, their relation being merely that of principal and agent.

3. ———: ———: ———: **Pleading.** A petition is examined and held to state a several action and not a joint one against the connecting carrier and the contracting carrier.

4. ———: ———: ———: ———: **Proof.** G carrier issued its bill of lading to deliver goods at L beyond its terminus but made no mention of the carrier by which it would complete the transportation. It delivered the goods to M carrier, who carried them to their destination. *Held*: (1) That the contract was not a joint contract between the carriers G and M; (2) That carrier G did not relieve itself from liability for the acts of M carrier; (3) That M carrier was the agent of G carrier and liable alike to it and the shipper for loss: (4) That the pleading mentioned in evidence was not based on a joint and several contract of the carriers but on the separate liability of M; (5) That the proof did not constitute a departure from the pleading.

5. ———: **Receipt of Goods: Course of Business: Evidence.** The evidence relating to the receipt of goods by one carrier from another under the ordinary course of business is reviewed and held that while the receipt is not binding but could have been examined the burden of proof was on the receiving carrier to show that it did not in fact receive the goods receipted for; and the failure of such evidence was a question for the jury.

6. ———: Damages: Contract: Consideration: Instruction.  A shipper has a right to have his property carried without any restriction on the carrier's common-law liability; and a contract tending to reduce the liability must be supported by sufficient consideration, and the mere agreement to transport such goods does not amount to such consideration.

7. ———: ———: ———: ———: ———: Evidence.  And where the contract fails to recite a reduced rate as a consideration the burden is upon the carrier to show by competent evidence there was such a rate; and where the shipment is interstate the proof must conform to the interstate commerce act requiring rates to be posted in the depots and filed with the commission, and the certificate of the commission's clerk is the proper evidence of such fact.

8. ———: ———: ———: ———: ———: ———.  A reduced rate based solely on a reduced valuation of the property shipped as a consideration for the release of damages, appears to bring the contract within the prohibition of the interstate commerce act.

Appeal from Jackson Circuit Court.—*Hon. Thomas H. Sheehan*, Special Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1)  The court erred in permitting plaintiff to dismiss as to the co-defendant St. Joe & Grand Island Railway Company.  The suit was to recover on an alleged joint contract.  Plaintiff having brought both defendants into court, either was entitled to contribution from the other, on motion in that suit.  (2)  The court erred in overruling the demurrer to the evidence and in submitting the case to the jury.  There was no proof of any joint undertaking, and the bill of lading introduced in evidence did not tend to sustain the allegations of the petition, nor was there any other proof that did.  (3) The petition having set up a joint contract, there could be no recovery upon proof that tended to prove only a separate contract as to either of the defendants.  Timber Co. v. Railroad, 180 Mo. 240.  (4)  The court erred in admit-

120 App.—19

ting in evidence the receipt which was relied on to prove delivery of the goods sued for, by the St. Joe and Grand Island Railway Company, to defendant, because there was no competent proof of its execution by defendant. The court also erred in submitting the case on that evidence because it did not tend to prove that defendant ever received the goods sued for. (5) The court erred in refusing to receive in evidence the tariff sheets showing the regular and special rates, and the conditions applying under the latter. (6) Independently of the tariff sheets, the evidence in the case established that the rate used in this shipment was a reduced rate, and that there was a stipulation fixing the value at five dollars per hundred. The court therefore erred in giving plaintiff's instructions, and in refusing defendant's third instruction. Goodman v. Railroad, 71 Mo. App. 460.

*Sheley & White* and *C. C. Madison* for respondent.

(1) This case was tried upon the theory that defendant violated its common law duties as a common carrier. The essential averment of the petition is that defendant received at Kansas City, for the purpose of transportation, as a common carrier, to Lehigh, Indian Territory, certain personal property, and that it failed and neglected to deliver it at destination. This charge was borne out by the evidence, and the instructions required the finding of those facts by the jury. It falls within the most elementary principles of the law of common carriers and is in line with all the decisions. Davis v. Jacksonville Line, 126 Mo. 69; Holliday v. Railroad, 74 Mo. 159; Express Co. v. Harris, 7 L. R. A. 215; Flynn v. Railroad, 43 Mo. App. 424; Wyman v. Railroad, 4 Mo. App. 35; Landes v. Railroad, 50 Mo. 346. (2) We have been unable to find any law that denies a plaintiff the right to dismiss as to a defendant at any stage of the proceedings. (3) The contention of appel-

lant, that the petition set up a joint contract, and that plaintiff should not recover, because the proof was only of a separate contract, is untenable for various reasons. If this constituted a joint contract, it would be joint and several under all the authorities in this class of cases. Wyman v. Railroad, 4 Mo. App. 35; Shewater v. Railroad, 84 Mo. App. 589; Live Stock Co. v. Railroad, 87 Mo. App. 330; Sec. 892, R. S. 1899. (4) The court very properly excluded the tariff sheets offered by defendant and instructed the jury that there was no evidence of any valid agreement of plaintiff limiting the amount of recovery. Flynn v. Railroad, supra; Summers v. Railroad, 79 S. W. 481; Powder Co. v. Railroad, 101 Mo. App. 442; Ward v. Railway, 158 Mo. 226.

JOHNSON, J.—This action was brought against the Missouri, Kansas & Texas Railway Company and the St. Joseph & Grand Island Railway Company to recover the value of a box of household goods lost in transportation. Before the case was tried the Grand Island Company was dismissed at the instance of plaintiff, and the cause proceeded against the remaining defendant, resulting in a judgment for plaintiff in the sum of $175, from which defendant appealed.

On June 25, 1903, the Grand Island Company, a common carrier, received from plaintiff at its station at Fairbury, Nebraska, a shipment of household goods (in which was included the box afterwards lost), for transportation from Fairbury to Lehigh, Indian Territory, a point on the line of the Missouri, Kansas & Texas Railway Company. Plaintiff paid the receiving carrier $21.80, the full amount of the charges demanded for through transportation. This was at the rate of $1.30 per hundred pounds, a rate previously fixed by the agreement of both carriers and in force at the time the shipment was received. A shipping contract was executed by the receiving carrier and plaintiff, in which it was

expressly stipulated that "the responsibility of each carrier is to cease at the station where said freight leaves its line when the property is to be delivered to connecting road or carriers." Other stipulations in the contract provide for various limitations of the common-law liability of the carriers, but no special consideration was expressed for these agreements. The Grand Island Company carried the shipment to Kansas City, the end of its line, and there delivered it to defendant. In due time the goods were delivered to the consignee by defendant at Lehigh with the exception of the box in controversy.

Defendant insists that the instruction in the nature of a demurrer to the evidence asked by it should have been given, and, first, we will decide the points made in support of that contention. It is urged by defendant that a different cause of action from that alleged in the petition was tried and submitted to the jury; that the cause pleaded is founded on the joint contract of the two carriers, but the recovery was had upon the separate obligation of the appealing defendant.

Notwithstanding the rule expressly recognized by statute (Revised Statutes 1899, section 892), which makes the liability of joint promisors or obligors several as well as joint and consequently permits a plaintiff, at his election, to maintain an action on a joint contract against a part or all of those who are bound to respond to him for a breach thereof, a cause alleged that is based on a joint contract cannot be sustained by proof of a cause founded on the separate contract of one of the alleged joint promisors. In such case the difference between allegation and proof is not to be regarded as a mere variance which is cured by verdict under the statute but as a total failure or proof. [Bagnell Lumber Co., v. Railroad, 180 Mo. 420.] After alleging in the petition that both defendants are common carriers for hire, and that there existed between them a joint traffic arrangement for the transportation of freight from points

on the line of one defendant to points on the line of the other, plaintiff alleges "that on or about June 25, 1903, he delivered to defendant, St. Joe & Grand Island Railway Company at Fairbury, Nebraska, and defendant received for transportation to Lehigh, Indian Territory, over its line and the line of its co-defendant, certain goods and chattels belonging to plaintiff for which said defendant, St. Joe & Grand Island Railway Company, in consideration of certain freight charges, issued a receipt or bill of lading and agreed on behalf of itself and its co-defendant to transport and deliver same to C. M. Fulks, as agent of plaintiff at said Lehigh, which said agreement was afterwards adopted and ratified by said defendant, Missouri, Kansas & Texas Railway Company, and the said goods were delivered to said M. K. & T., at Kansas City." Then follows the allegation that the connecting carrier failed to deliver the property specified, to the consignee at the place of delivery.

The bill of lading issued by the Grand Island Company did not mention any other carrier as a party to the contract of affreightment, nor did it require the contracting carrier to employ the present defendant in the performance of that contract, nor to carry the shipment via Kansas City, the terminus of its line. The Grand Island Company was left free to divert the goods to a connecting carrier at an intermediate point on its own line or to employ another carrier at Kansas City. Though it is clear the contracting carrier contemplated from the first to carry the goods to the end of its own line and there deliver them to the Missouri, Kansas & Texas Company, the latter carrier was not a party to the contract when it was made and incurred no obligation with respect to the shipment during its transportation over the line of the initial carrier. Despite the stipulation in the contract by which the Grand Island Company endeavored to limit its liability to that resulting from its own acts, the contract must be regarded as one for the

through transportation of the property. Lehigh was named as the destination of the shipment. A charge was made and collected through to that point, and the contract did not provide that the contracting carrier would carry the property only to the end of its own line. These facts classify the contract as an undertaking on the part of the initial carrier to carry the property to its destination, and the agreement to exonerate that carrier from liability for loss or damage resulting from the acts of connecting carriers was void. [Buffington & Lee v. Railroad, 118 Mo. App. 476; Bushnell v. Railroad, 118 Mo. App. 618; Bank v. Railway, 72 Mo. App. 82; Marshall v. Railway, 74 Mo. App. 81; Popham v. Barnard, 77 Mo. App. 628; Marshall v. Railway, 176 Mo. 480; Western Sash & Door Company v. Railway, 177 Mo. 641.] When the present defendant received the shipment at Kansas City it became the agent of the contracting carrier to complete the performance of the contract, but as the shipping contract contemplated that the services of a connecting carrier necessarily would be employed in the transportation, the receipt of the property under that contract by the connecting carrier established a contractual relation between it and the shipper and enabled the latter to maintain an action on that contract against such connecting carrier. [Halliday v. Railway, 74 Mo. 159; Aiken v. Railroad, 80 Mo. App. 8; Shewalter v. Railway, 84 Mo. App. 589.] Although the shipper could maintain an action against either the contracting or the connecting carrier for the loss of the property during transportation while in the hands of the latter carrier, the two carriers were not joint contractors. Their relation to each other was that of principal and agent, and the contracting carrier, if compelled to reimburse the shipper for such loss, could recover in an action against the connecting carrier the amount so expended. [Sec. 5222, R. S. 1899.]

Having ascertained that the carriers were not joint contractors, we revert to the averments of the petition to see if they were sued as such. Aside from the preliminary allegation that a joint traffic arrangement existed between them for the transportation of freight between points on one line and points on the other, there is nothing to indicate an intention to plead a joint contract. Very likely the pleader inaptly referred to the fact that rates for through transportation had been provided by the carriers to apply to such shipments, but however this may be, the averment under consideration is not an element of the cause of action asserted. The petition states the constitutive facts, namely; that the Grand Island Company was the sole contracting carrier; that it undertook to carry the property for a consideration from Fairbury to Lehigh and there deliver it to the agent of plaintiff; that it carried the property to Kansas City and there delivered it to the connecting carrier; that the latter carrier received the property at that place under the shipping contract which it then adopted and ratified. This is but the statement of the facts afterwards proven and is no more the allegation of a joint contract than the proven facts are proof of a joint contract. There is no variance between allegation and proof, and this point must be ruled against the contention of defendant.

Further it is argued by defendant that plaintiff failed to show the delivery of the lost box to defendant. If the property was lost while in the care of the contracting carrier, defendant cannot be held liable for such loss and therefore the burden was on plaintiff to show that defendant actually received the property in the course of its transportation. Plaintiff introduced as a witness the agent of the Grand Island Company at Kansas City, who testified that the shipment arrived intact at Kansas City and was sent over to the defendant company's yards in wagons. At the same time the waybill and a receipt for the goods were sent by messenger to defendant. A

few days later the receipt bearing the signature of the agent of defendant was returned to the Grand Island office by "railroad mail." An initial letter following the signature indicated that the name of defendant's agent had not been signed by him. The Grand Island agent did not know of his own knowledge who signed the receipt nor did he know that any of the property had been delivered to defendant, but in this instance he followed the uniform course of dealing observed by the two companies in like cases and the receipt came back to him through the customary channel signed by the same person and in the same manner as other like receipts had been signed. Further, he said it was not customary for freight agents to sign such receipts, but to permit that to be done by a receiving clerk. In addition to these facts it is undisputed that defendant did deliver all of the property, except the missing box, to the consignee at Lehigh and manifestly it must have received the property so delivered from the Grand Island Company at Kansas City. These facts tend to show the receipt was regularly issued by defendant and no error was committed in receiving it in evidence.

It is urged by defendant that the receipt itself, considered in connection with other facts in evidence, shows conclusively that defendant did not receive the box of household goods. The receipt contained a list of the articles delivered among which was "1 box books" followed next in the list by "1 box H. H. G'ds" (household goods) ; when the receipt was returned it was found that defendant had placed a check mark opposite the box of books and at the bottom of the paper had written the word "short" opposite a similar check mark indicating that the box of books was not with the goods received. Counsel argue that evidently the check was mistakenly placed opposite the wrong item and instead should have been placed to indicate the box of household goods and in support of the contention point out that no complaint

is made that the box of books was missing from the goods delivered at Lehigh., Prima facie, the receipt was an admission made by defendant in writing that it received the box of household goods. Defendant, however, was not conclusively bound by that admission, but could show by other evidence that it was made in mistake and that in fact defendant did not receive that box of goods. The burden of proof was on defendant to overcome the presumption arising from the admission. The fact relied on does strongly tend to impeach the verity of the receipt but it goes no further than to raise an issue of fact for the triers of fact to determine and that issue has been resolved in favor of plaintiff.

No error was committed in overruling the demurrer to the evidence.

Finally defendant complains of the instruction given on the measure of damages, which directed the jury to assess the damages "at such sum as you find from the evidence to be the reasonable value of any of plaintiff's goods which defendant received from the St. Joseph & Grand Island railroad at Kansas City and failed and neglected to deliver," etc. Defendant claims that the contract expressed in the bill of lading fixed the maximum damages plaintiff could recover for loss or damage to the property at five dollars per hundred pounds, and insists that the recovery should have been limited to that amount. If defendant is right in this contention, the verdict should not have exceeded $40, as it is admitted the box weighed 800 pounds. The only expression to be found in the bill of lading of an agreement to limit the amount of the carrier's liability is in this form. "O. R. Rel. 5.00 Cw't." As interpreted by defendant's witness this means "owner's risk, carrier's liability released to $5 per hundred pounds."

A shipper has the right to have his property carried without any restriction being placed on the carrier's common-law liability. But the law permits him by con-

tract with the carrier to release the latter from all liability, except that for damages resulting from the carrier's negligence. Such agreement, however, to be valid must be fairly obtained and must be supported by a sufficient consideration, and the mere agreement of the carrier to transport the property of itself affords no such consideraction, since the carrier is bound on the shipper's demand to perform the transportation without exacting of the shipper any agreement to release it from any part of its common-law liability. [Ficklin v. Railroad, 115 Mo. App. 633, 93 S. W. 847; Kellerman v. Railroad, 136 Mo. 177; McFaddin v. Railroad, 92 Mo. 343.] The written contract of affreightment before us discloses no consideration for an agreement on the part of plaintiff to release the carrier's liability to five dollars per hundred pounds, and that agreement must fail for lack of consideration.

Defendant endeavored to show by oral evidence that a reduced freight rate in fact was given plaintiff as a consideration for the release agreement, but as the written contract recited no such consideration, the burden was on defendant to establish that fact, if it existed, by competent evidence. This being an interstate shipment, the interstate commerce act required the rates applicable thereto to be filed with the Interstate Commerce Commission and posted in the station of the contracting carrier at Fairbury. Defendant failed to produce a certificate of the secretary of that commission showing the filing of its schedule of rates and the only witness it offered — its rate clerk — admitted he did not know that the schedules were on file nor did he know that they were posted in the station at Fairbury.

Defendant realizing that it failed completely to prove compliance with the interstate commerce act, asks us to follow the rule announced in Wyrick v. Railway, 74 Mo. App. 406, where we said: "In the absence of proof to the contrary, as here, we must presume that the defendant has performed its duty of fixing its tariffs on

interstate shipments and filing the schedule thereof and that the Interstate Commerce Commission has likewise performed its duty in respect to such tariffs." But in that case the written contract of affreightment expressly recited a reduced rate as the consideration given for the release agreement, and we held that such recital was prima facie evidence of the truth thereof and cast the burdén of proof on the shipper, who admitted in the written contract executed by him that he had received a consideration to overcome the presumption arising from that admission; and in carrying that presumption to its logical end we not only indulged in the inference that a lower rate than that applicable to a shipment under a non-release contract had been given, but that such rate was one authorized by the schedules on file with the Interstate Commerce Commission and duly posted in the stations of the contracting carriers, and was a rate the carrier could offer shippers under the provisions of the interstate commerce act.

In the case of Ward v. Railway, 158 Mo. 226, the Supreme Court appears to hold that a reduced rate, based solely on a reduced valuation of the property shipped and the agreement of the shipper to release all damages he may sustain beyond that valuation, brings the contract within the prohibition of the interstate commerce act. Plaintiff here invokes the broad doctrine announced in that case, but we do not find it necessary to resort to it, and prefer to place our decision of the question in hand on the ground that as the written contract expressed no other consideration for the release agreement than the mere undertaking of the carrier to transport the property, the presumption indulged in the Wyrick case does not obtain; and as defendant failed to show that the reduced rate it claims as the real consideration for the release agreement was included in the schedules of rates filed with the Interstate Commerce Commission, and duly posted in the station at Fairbury,

it failed to show that the release agreement was one it was authorized by law to make with shippers. [Summers v. Railway, 114 Mo. App. 452.]

The instruction under consideration correctly declared the law applicable to the facts in evidence. The judgment is affirmed. All concur.