CENTRAL AMERICAN STEAMSHIP COMPANY, Respondent, v. MOBILE & OHIO RAILROAD COMPANY and ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellants.

Kansas City Court of Appeals, May 16, 1910.

1. **COMMON CARRIERS: Initial and Connecting Carriers: Negligence: Parties.** Plaintiff, through a commission firm, sold a carload of bananas to the newly organized firm of Wells & Son, doing business as W. H. Wells & Son Banana Company, at Kansas City, Mo. There was at said time and place a corporation which had long been doing business, named W. H. Wells Fruit Co. Plaintiff's agents delivered the bananas to the defendant, Mobile & Ohio Railroad Company, which issued a bill of lading therefor, and consigned said fruit to W. H. Wells & Son at

Kansas City, Mo., and carried the car to Tupelo, Miss., where it delivered same to the defendant, St. Louis & San Francisco Railroad Company, which carried the car to Kansas City. The Mobile Company's agent made out a waybill showing the consignee to be W. H. Wells Fruit Company, and also advised the Frisco Company's agent and conductor at Tupelo that said Fruit Company was the consignee. The bill of lading authorized delivery of the property without requiring the production of the bill of lading. In conformity with the usual custom of delivering perishable freight of this kind without waiting for the presentation of the bill of lading, the car on arrival at Kansas City was delivered to W. H. Wells Fruit Co. *Held*, (a) The plaintiff as consignor, had a right to maintain the action; (b) The Mobile Company was responsible for its error in misnaming the consignee in its waybills and in giving such advice to the Frisco Company; (c) The Frisco Company was responsible for the error, because, in this case the carrying companies maintained a relationship akin to that of partnership, and each was responsible for the negligent acts of the other.

2. ————: ————: ————. Where the initial carrier knows that the connecting carrier will follow the custom of delivering perishable freight to the consignee shown on the waybill, without waiting for the receipt of the bill of lading, the initial carrier must be held to have anticipated that a natural consequence of its negligence in misnaming the consignee in its waybilling would be a delivery of the goods to the consignee named in the waybills.

3. ————: ————: ————. Where the express terms of the contract of transportation are designed to expedite the transportation and delivery of perishable freight, the connecting carrier is justified in making delivery without the production of the bill of lading, and the connecting carrier in this case had the right to act on the presumption that the waybilling furnished by the initial carrier correctly named the consignee.

4. ————: ————: ————. Where an initial carrier contracts to carry freight to its destination beyond such carrier's line, such initial carrier is liable for the negligence of either the initial or the connecting carrier.

5. ————: ————: Contract: Limiting Liability. If a receiving carrier's contract is to transport freight to the point of destination, it cannot limit its liability for the negligence of the connecting carrier.

6. ————: ————: ————. The receipt of freight and issuing a bill of lading therefor to a destination beyond its own line is

prima facie an agreement to carry it to such point. To prevent such operation of the contract it becomes necessary for the initial carrier to stipulate that it is only to carry to the end of its own line. Although the contract in this case has a provision attempting to restrict the responsibility of the initial carrier to its own acts, it is to be construed, as a whole, as a contract for through transportation.

7. ——: ——. If several common carriers, each having its own line, associate and form what to the shipper is a continuous line, and contract to carry goods through for an agreed price, which the shipper pays in one sum and which the carriers divide among themselves, and the contract of carriage prescribes the route of transportation and names the connecting carrier, then as to third persons contracting with them their relation is to be regarded as a sort of partnership, each being liable for the acts of the others as well as itself.

8. **PLEADING: Designating Form of Action.** Under the code it is for the court and not for the pleader to name his cause of action. It is sufficient if he properly states the essential facts constituting a cause of action.

9. ——: ——: **Waiver.** Where a defendant sets up the terms of a contract as a defense to plaintiff's cause of action, it is in no position to urge that the rights of the parties are not to be measured by the contract.

10. **ACTIONS: Joint and Several Liability: Adjusting Liabilities Between Defendants.** Where the plaintiff has a right to recover against each of two defendants, the court has no right to adjust equities between the two defendants, or to discharge one defendant because the other defendant is the one at fault. Courts should not take from an injured and innocent party a valuable right.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans,* Special Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant Mobile & Ohio Railroad Company.

(1) The shipment in this case having originated in Alabama and the bill of lading having been issued there, it is not affected by the statute of this State

(R. S. 1899, sec. 5222), but all rights and liabilities will be governed and controlled by the common law. Coal & Coke Co. v. Railroad, 116 Mo. App. 224; Crouch v. Railroad, 42 Mo. App. 248; Otis & Co. v. Railroad, 112 Mo. 628; Nemo v. Railroad, 105 Mo. 549. (2) Under the common law a common carrier receiving goods for transportation to a point beyond its own line, engages only to carry them safely and within a reasonable time to the end of its own line, and there to deliver them to the next carrier to complete the transit. Coates v. Express Co., 45 Mo. 238; Goldsmith v. Railroad, 12 Mo. App. 479; Patterson v. Railroad, 47 Mo. App. 570; Railroad v. Pratt, 22 Wallace 123; 1 Hutchinson on Carriers (3 Ed.), sec. 231; Moore on Carriers, p. 457, sec. 8. (3) Uninfluenced by a statute, such as section 5222, statutes of 1899, of this State, a common carrier may accept property to be transported over its own line and that of one or more connecting carriers, and may by contract protect itself against liability not occurring on its own line. Read v. Railroad, 60 Mo. 199; Nims v. Railroad, 107 Mo. 475; Ketchum v. Express Co., 52 Mo. 390; Snyder v. Express Co., 63 Mo. 379; Myrick v. Railroad, 107 U. S. 102; 1 Hutchinson on Carriers (3 Ed.), secs. 233 and 243; Moore on Carriers, p. 479, sec. 19. (4) The fact that the carrier guarantees a through rate of freight for the entire route over connecting lines does not change the rule, nor does such fact alone create or show a through contract or joint arrangement between carriers over whose lines the traffic may move. Crouch v. Railroad, 42 Mo. App. 248; Goldsmith v. Railroad, 12 Mo. App. 479; Moore on Carriers, p. 476, sec. 16; Insurance Co. v. Wheeler, 49 N. Y. 616; Railroad v. Forsyth, 61 Pa. St. 81; Lamb v. Railroad, 46 N. Y. 271; Railroad v. Griffith, 24 S. W. 362; Page v. Railroad, 64 N. W. 137. (a) Nor will a division of freight charges make the connecting lines partners. Railroad v. Jones, 155 U. S. 333; Watson v. Railroad, 80 Iowa 92. (5) A carrier cannot legally

make delivery of property intrusted to it, to any but the consignee, and it is its duty to ascertain whether or not a bill of lading has been issued and make delivery according to the bill of lading. Cole v. Railroad, 21 Mo. App. 450; Schwarzschild v. Railway, 76 Mo. App. 629; Moore on Carriers, p. 168, sec. 13; 1 Hutchinson on Carriers (3 Ed.), sec. 177; Moore on Carriers, p. 160, sec. 9. (6) It was the duty of the Frisco Railroad, after receiving notice of the claim of Wells & Son and Wells Fruit Company, to make inquiry as to who was the true owner of the bananas, or who was entitled to the possession of the same, before making delivery to either of the claimants. Moore on Carriers, p. 178, sec. 21; 2 Hutchinson on Carriers (3 Ed.), secs. 684 and 753; Bank v. Railroad, 44 N. Y. 141. It was not relieved from this duty by the mistake in billing at Tupelo. Winslow v. Railroad, 42 Vt. 700. (7) It was the duty of the Frisco Railroad, after it was informed the next day after delivery to the Wells Fruit Company that the bananas were intended for Wells & Son and not for the Wells Fruit Company, to have notified all parties interested, or to have reclaimed the bananas by proper legal process. 2 Hutchinson on Carriers (3 Ed.), sec. 779; Moore on Carriers, p. 363, sec. 1. (8) As the relation of carrier and shipper did not exist between the plaintiff and Mobile & Ohio Railroad at the time of the delivery of the bananas to the Wells Fruit Company, and the possession of the bananas had passed out of the Mobile & Ohio Railroad, it could not have been guilty of conversion of same. Redmond v. Railroad, 90 Mo. App. 68; Railway v. Odom, 63 Ark. 330. (9) The plaintiffs cannot maintain this suit for conversion of the bananas for the reason that the title to the same was lodged in the consignee at the time of the misdelivery by the Frisco Company. Mechem on Sales, secs. 739, 740, 1175, 1196; Bank v. Railroad, 62 Mo. App. 540; Hordy v. Munroe, 127 Mass. 64; Bank v. Harneyer, 45 Mo. 149; Stockyards v. Mallory

(Ill.), 41 N. E. 888; Live Stock Co. v. Railroad, 87 Mo. App. 336; McIntyre v. Blakley, 12 Atl. (Pa.) 325; McLaughlin v. Martin, 55 Pac. (Col.) 195; Bank v. Express Co., 102 N. W. (Iowa) 107; Mail Line v. Mfg. Co., 101 Ky. 658; Railroad v. Algood, 113 Ala. 163; Railway v. Lewis, 89 Ill. App. 30.    (a)    Right of stoppage *in transitu*, when exercised, does not rescind sale or revert title to property in vendor.    2 Mechem on Sales, secs. 1523, 1611, 1612; Childs v. Railroad, 25 U. C. Q. B. 165.

*W. F. Evans, Dana, Cowherd & Ingraham* and *Arthur H. Morse* for appellant, St. Louis and San Francisco Railroad Company.

When goods are delivered to a carrier in the usual course of business, and consigned to a third party, the presumption is that upon delivery to the carrier, the shipper parts with his interest and the title to the property is in the consignee. Scharff v. Meyer, 133 Mo. 429; Bank v. Smith, 107 Mo. App. 188; Gill & Fisher v. Commission Co., 84 Mo. App. 456; Drug Co. v. MacMahan, 50 Mo. App. 25; Hutchinson on Carriers (2 Ed.), sec. 130; Benjamin on Sales, sec. 181; Mechem on Sales, secs. 736, 740.

*J. N. Davis* and *Karnes, New & Krauthoff* for respondent.

(1)    This plaintiff was the real consignor, and as such had a right to maintain this action. Warehouse Co. v. Railroad, 124 Mo. App. 564; Van Buskirk v. Railway, 111 S. W. Rep. 833; Medicine Co. v. Railway, 126 Mo. App. 455.    (2)    The initial carrier may show by his conduct that he received the freight for the whole route and so delivered it to connecting carrier and the manner of dealing may show that it was so received and handled by the connecting carrier. Hutchinson on Carriers

(3 Ed.), sec. 244; Crouch v. Railway, 42 Mo. App. 249; Coates v. Express Co., 45 Mo. 238; McCarthy v. Railroad, 9 Mo. App. 116. (3) The bill of lading read in the light of Eckles v. Mo. Pac. Ry. Co., 112 Mo. App. 240, was clearly a contract for through shipment. Com. Co. v. Railroad, 87 Mo. App. 334; Mining Co. v. Railroad, 127 Mo. 90; Marshall, etc., Co. v. Railroad, 176 Mo. 89; Shewalter v. Railway, 84 Mo. App. 597.

JOHNSON, J.—Plaintiff sued the Mobile & Ohio Railroad Company (hereinafter referred to as the initial carrier) and the St. Louis & San Francisco Railroad Company (referred to as the connecting carrier) to recover the value of a carload of bananas delivered to the initial carrier at Mobile, Alabama, for transportation to Kansas City and for delivery at that place to W. H. Wells & Son, the consignees named in the bill of lading. Trial to the court, without the aid of a jury, resulted in a judgment for plaintiff against both defendants. An appeal was taken by each defendant and the controversy presented by the record and briefs is one in which each party to the action is looking out for itself alone and is indifferent to what may befall the others. Though trying to hold both defendants liable, plaintiff would be satisfied with a judgment against either, and each defendant is laboring quite as hard to shift the sole responsibility for plaintiff's loss to the shoulders of its codefendant as it is to show that plaintiff has no cause of action against either. A full statement of the material facts of the case appears in the following findings of fact made by the court at the request of the connecting carrier:

"In August, 1905, there were engaged in the banana business in Kansas City a corporation under the name of W. H. Wells Fruit Company, and a partnership under the name of W. H. Wells & Son Banana Company;

144 App—4

the former had been in business for sometime and the latter recently established. W. H. Wells had been for a long time connected with the corporation, but left it and formed the said partnership.

"August 17, 1905, defendant Mobile and Ohio Railroad Company at the city of Mobile, Alabama, received from J. B. Cefalu & Brother a carload of bananas in I. C. car 54515 and issued its bill of lading therefor of the same date acknowledging receipt of said bananas from said shippers and consigning the fruit to W. H. Wells & Sons, Kansas City, Missouri, routing them via Tupelo, Mississippi, where they were to be delivered to the defendant St. Louis and San Francisco Railroad Company. The bill of lading was delivered to the shipper and was never seen by the St. Louis and San Francisco Railroad Company until after the bananas had reached Kansas City and been delivered.

"Among other provisions, the bill of lading contained the following: '8. If the word "order" is written hereon immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property, the surrender of this bill of lading, properly endorsed, shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading.' The word 'order' was not written upon said bill of lading.

"The car reached Tupelo August 17, 1905, and was at once delivered to the connecting carrier, the St. Louis and San Francisco Railroad Company, and started promptly on its way towards Kansas City, arriving at Memphis, Tennessee, the next day. From Memphis it was at once forwarded and arrived at Kansas City at 3:10 p. m. on August 19, 1905.

"The bill of lading was signed by the Mobile Company's agent at Mobile, H. J. Griffin, and on the same day he telegraphed that company's agent, Thompson, at Tupelo, billing instructions for the car as follows: '54515, W. H. Wells Fruit Company, Kansas City, Missouri; gross 584; tare 379; net 20500; rate 65; freight $129.15.' These were the only instructions or information which the agent at Tupelo had with reference to the forwarding or consigning of the bananas.

"Upon the arrival of the bananas at Tupelo the Mobile Company's agent, Thompson, made out a waybill, or billing, as it is called, in accordance with such instructions, showing among other things, the consignee as W. H. Wells Fruit Company, and mailed one copy of such waybill to the agent of the Frisco at Kansas City.

"In order that the agent and conductor of the Frisco Company at Tupelo might know what to do with the car, Agent Thompson also gave the same information as to destination and consignee to the Frisco Company's agent there, who entered such information upon a red ball waybill, so-called, being a paper used for perishable freight to be moved quickly, and gave the same to the Frisco Company's conductor in charge of the train which took the car to Memphis. At the latter place the said conductor delivered this red ball waybill to the conductor of the train, who took the car from Memphis towards Kansas City, and that conductor delivered it to the next conductor, and so on, and each conductor endorsed on the back of said red ball waybill, in blanks for the purpose, the number of the train in which he carried it, the time at which he received it and delivered it and the stations between which it was hauled in his custody.

"Before the train arrived in Kansas City the agent at that place received a telegram from the Memphis agent informing him that a car of bananas consigned to W. H. Wells Fruit Company was in a certain train due

at Kansas City at a certain time, and such receiving agent telephoned the W. H. Wells Fruit Company, which had often received bananas over his line, the fact that the car was en route and asked instructions as to its disposition. The fruit company told him to put the car upon the team track, which was a track where carload freight is unloaded into wagons by consignees or owners.

"Promptly after the arrival of the car in Kansas City it was placed upon said team track, arriving there about 5 o'clock p. m. on Saturday, August 19, 1905; representatives of the fruit company were present with wagons to receive the bananas, and also W. H. Wells was there claiming them for his firm. Neither party had any bill of lading and neither had any directions of any kind from the Mobile Company with regard to the delivery of the bananas.

"The Frisco Company had no information or knowledge with regard to the consignee of said bananas except what was contained in the red ball waybill brought from Tupelo by its conductors and at Kansas City delivered to its agent, and in the waybill mailed to such agent by the Mobile Company's agent, Thompson, from Tupelo, other than the claim and information given by W. H. Wells to the Frisco Company's agent before the delivery of the car; both of said papers showed consignee as W. H. Wells Fruit Company without any limitation or condition, and such agent delivered the bananas, acting upon such directions and in consequence thereof, to the W. H. Wells Fruit Company.

"The Frisco Company's agent, as such agent for twenty years, had handled a large number of carload lots of bananas at Kansas City, especially from southern points. Bananas in his experience had always been shipped to a direct consignee without any shippers' order condition and had always been delivered to the consignee named by the initial carrier in the billing or waybills forwarded, without asking or waiting for

the surrender of the bill of lading. Bananas so shipped reached Kansas City and were delivered before the bills of ladings issued therefor at point of shipment arrived.

"Bananas are very perishable fruit and must be handled promptly, especially after transportation in closed cars in hot weather, in order to prevent their spoiling. Defendant Frisco Company had no shed or other house or structure for keeping or hanging bananas in, and had not the bananas in this case been delivered Saturday night they must have remained in the car exposed to the August sun for many hours longer if the bill of lading was to be waited for, unless the said company had stored them in a warehouse operated by someone other than itself.

"The bill of lading consigned the bananas to W. H. Wells & Sons; the evidence did not show that anyone had done business in Kansas City under that name previous to the arrival of this car. The W. H. Wells Fruit Company was a solvent, going concern, often receiving shipments of bananas. There was no reason for the Frisco Company's agent to suspect that said W. H. Wells Fruit Company was not acting in good faith in claiming that the bananas were intended for it."

We do not find it necessary to refer to the declarations of law given by the court since our solution of the questions presented by the demurrers to the evidence, asked by defendants, disposes of the case. Both defendants argue that plaintiff cannot recover for the reason that the cause of action asserted in the petition is *ex delicto* and as it appears that plaintiff, though the consignor, was not the owner of the property, it cannot maintain an action in tort for the failure of the carriers to deliver to the consignees. The rule is well settled in this State that "suit on a transportation contract is properly brought in the name of the consignor, whether he be the owner or not." [Atchison v. Railway, 80 Mo. 213; Ross v. Railroad, 119 Mo. App. 1. c. 294; Van Buskirk v. Railroad, 131 Mo. App. 1. c.

363; section 514, Revised Statutes 1899.] But defendants invoke the rule thus stated in Hutchinson on Carriers (2 Ed.), sec. 730: "The action, however, where he (the consignor) has no property or interest in the goods, must rest exclusively upon the contract, and he will be confined to assumpsit and cannot sue in an action *ex delicto* for the breach of duty by the carrier."

We think the adoption of this rule would not alter our conclusion that plaintiff is entitled to maintain the action. Clearly the cause pleaded is founded on the transportation contract. It is alleged that the initial carrier issued a bill of lading to plaintiff's agents whereby defendants agreed for hire to carry the goods from Mobile to Kansas City and there to deliver them to the consignees and that defendants violated their agreement by failing to deliver the property to the consignees or to plaintiff. We have here the elements of a cause of action on a transportation contract as distinguished from one founded on a breach of the common law duty of the carrier. [Creamery Company v. Railway, 128 Mo. App. 420.] It is immaterial that the petition contains the further allegation that the defendants converted the property to their own use; that fact, if found to exist, would not militate against an action on contract, but on the contrary, would establish one of the elements of such cause, *viz.*, a breach of the contractual obligation to deliver. Under our code, there is but one form of civil action (sec. 539, R. S. 1899) and it does not devolve on the pleader to state the nature of his cause in his petition. He must give a plain and concise statement of the facts constitutive of his cause of action (section 592, Revised Statutes 1899). From such statement, the court will determine the nature of the cause and will not turn the plaintiff out of court where the facts averred comprise all the elements of a good cause of action. Further, we must observe that the initial carrier is in no position to urge that the rights of the parties are not to be measured by the contract

since in its answer it pleads the contract and invokes its terms to escape liability. We conclude that plaintiff, as consignor, is entitled to maintain the suit, though the title to the goods passed to the consignees on their delivery to the initial carrier.

We pass to the question of whether the proof discloses a cause of action against the initial carrier. The bill of lading issued to plaintiff's agents contains a number of restrictions on the carrier's common law liability which are stated therein to be based on the consideration of a reduced rate. Among the stipulations is the following: "The company agrees to carry said property to destination if on its road; if said destination is not on its road and the company guarantees a through rate to destination, then it agrees to deliver said property to such other carrier on the route to destination as the company may select, but it does not agree to carry to any point beyond its own line, or to be responsible beyond its own line in any manner under any circumstances." The bill recites: "Consigned to W. H. Wells & Son, Kansas City, Mo., Tupelo and Frisco; Rates guaranteed: 63 cents per 100 pounds. List of articles: Bananas. Weight: 20500. Marked: I. C. 54515. S. L. & C."

Considering the contract as a whole, we regard it as one for through transportation with an abortive attempt to restrict the responsibility of the initial carrier to its own acts. The rule is well settled that "if the receiving carrier's contract is to transport the freight to the point of destination, it cannot limit its liability for the negligence of the connecting carrier. And the receipt of freight and issuing a bill of lading therefor to a destination beyond its own line is prima facie an agreement to carry it to such point. . . . To prevent such operation of the contract it becomes necessary for the initial carrier to stipulate that it is only to carry to end of its own line." [Buffington v. Railroad, 118 Mo. 476; Hardin v. Railway, 120 Mo. App.

203; Marshall v. Railway, 176 Mo. 480; Western Sash Co. v. Railway, 177 Mo. 641.] The initial carrier is liable to plaintiff whether the failure to deliver the property to the consignees was caused by its own fault or by that of the connecting carrier. But if it might be said that the contract of the initial carrier was only to carry the goods to the end of its own line and there to deliver them to the connecting carrier, still the proof shows beyond question that the negligence of the initial carrier in misnaming the consignee in the waybilling was the direct cause of the loss. Knowing, as it did, that the connecting carrier would follow the custom of delivering such highly perishable freight to the consignee shown on the waybill without waiting for the receipt of the bill of lading, the initial carrier must be held to have anticipated that a natural consequence of its negligence would be a delivery of the goods to the consignee named in the waybills. It is argued by the initial carrier that the proximate cause of the loss was the act of the connecting carrier in delivering the goods without the production of the bill of lading. By the express terms of the contract which were designed to expedite the transportation and delivery of highly perishable freight, the connecting carrier was authorized to make delivery without the production of the bill of lading. At least as between the carriers themselves effect should be given this provision of the contract, and the connecting carrier had the right to act on the presumption that the waybilling furnished by the initial carrier correctly named the consignee.

But it does not follow from the fact that as between the carriers the fault which caused the loss was wholly that of the initial carrier, that plaintiff has no cause of action against the connecting carrier. The railroads of defendants formed a continuous line from Mobile to Kansas City and defendants contracted to carry the goods through on that line for an agreed sum to be divided between them. The rule is well settled "that if

several common carriers, having each its own line, associate and form what to the shippers is a continuous line, and contract to carry goods through for an agreed price, which the shipper or consignee pays in one sum, and which the carriers divide among them, then, as to third parties with whom they contract, they are liable jointly for a loss taking place on any part of the whole line." [Eckles v. Railway, 112 Mo. App. 1. c. 252, and authorities cited.] Their relation is to be regarded as a sort of partnership and the liability of each is that of a partner. [Hutchinson on Carriers (2 Ed.), sec. 158.]

This case differs essentially from that before us in Myers v. Railway, 120 Mo. App. 288. There the contract did not prescribe the route of transportation nor name the connecting carrier. Here it did, in a way to demonstrate that it was issued pursuant to a traffic agreement subsisting between the carriers named.

Counsel for the connecting carrier, in effect, state in their brief that their client would be liable had suit been brought against it alone. They say, "it may be that where the last carrier alone is in court and sued, it would be proper under some circumstances to hold it responsible, compelling it to resort, either by notice to the initial carrier or by a suit over against it, to such remedy for reimbursement, rather than to nonsuit the injured plaintiff. But that is not this case. Here are present both the carriers, the initial carrier and its connection, and the court can do justice between them. Should not then the one which concededly is responsible for the mistake and which the law says acted as the agent of the plaintiff in making that mistake, be held to answer for the results thereof?"

But this is an action at law prosecuted by the shipper and is not a suit between the carriers. We have no right in an action of this nature to adjust equities between the defendants, and certainly it would be unjust to plaintiff to deprive it of its lawful right to recover

against the connecting carrier on the ground that the initial carrier was the one at fault and is a party to the suit. As well say in an action brought against partners on a promissory note that one of the partners should be relieved of liability because, as between him and his codefendants, they should pay the debt. In the effort to prevent a multiplicity of suits, courts should not take from the injured and innocent party a substantial and valuable right.

We conclude that both defendants are liable and, finding no error in the record, affirm the judgment. All concur.