T. M. OTRICH, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY and ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellants.

Springfield Court of Appeals, February 6, 1911.

1. ACTIONS: Joint Actions: Carriers: Damage to Shipment. Plaintiff's action was against two railroads, the initial and connecting carrier, for damages to a shipment of horses and mules. It did not appear from the evidence that the connecting or last carrier had been guilty of any negligence resulting in injury to the shipment. *Held*, that a joint action would not lie.

2. ———: ———: Tort: Proof. An action based on a joint tort cannot be supported by proofs of separate torts of the alleged joint tortfeasor. To sustain the joint action there must have been such concurrent action between the defendants as to create a joint liability.

3. ———: ———: ———: Failure of Proof: Variance. In a suit against defendants jointly, based on a joint tort where the proofs show separate torts and no concurrent or joint action by the defendants, the difference between the allegations and the proof is not to be regarded as a mere variance, which is cured by verdict under the statute, but is a total failure of proof.

4. CARRIERS: Joint Traffic Arrangements: Partnerships. Where carriers on connecting routes form associations and arrangements for the purpose of carrying goods or parcels through the whole line, they are partners, and as such are responsible for any loss or injury to goods which happen on whatever part of the line it occurs.

5. ———: ———: Joint Liability: Failure of Proof. In a suit against common carriers jointly, for damages to a shipment of live stock, the evidence is examined and *held* not to show any traffic arrangement between the defendant carriers as to the shipment of plaintiff's stock that would make them jointly and severally liable for any injury during transportation.

6. ———: Interstate Commerce Act: Liability of Initial Carrier: Joint Liability. Under the Interstate Commerce Act the initial carrier is liable for any loss, damage or injury to a through shipment of stock caused by it or by any common carrier to which such property was delivered, and therefore, such initial carrier would be jointly liable with the connecting carrier for any damages caused by the latter, but the connecting carrier would not be liable for any injury caused to the shipment upon the line or by the acts of the initial carrier.

7. ———: Defective Car: Selection by Shipper. Where a shipper refuses to wait for a better car which was promised him on the following day, but takes a defective car, repairs it and loads his stock into it, then if the stock was injured by reason of the defects and insufficiency of the car, it was his own act and he cannot hold the carrier responsible therefor.

8. ———: Delay in Shipment: Negligence. In an action for damages for delay in a shipment of live stock it is not sufficient that the plaintiff show simply that there was a delay in order to render the defendant liable, but he must further show that the delay was occasioned by the carrier's negligence.

9. ———: ———: ———.  Where a connecting carrier finds it necessary, in order to protect a shipment of stock from further injury before shipping over its line, to unload it and reload it into another and larger car, and if in consequence of such reloading, it was impossible to get the shipment ready for the next train, the acts of the carrier would not be negligent and there could be no recovery for the delay.

10. ———: ———: ———.  There can be no recovery for delay in the shipment of stock where the carrier handles the shipment in its customary trains and in the usual and ordinary course of business, for this is all that the law requires.

11. PLEADING: Evidence: Conclusiveness of Pleading.  A party will not be permitted to give evidence on a trial contradicting his pleading.  He must abide by the statements made in his own pleading and is absolutely concluded by such allegations.

12. ———: Allegations in the Alternative.  Under section 626, Revised Statutes 1899, a fact may be alleged in the alternative by either party but in order to bring such allegations within the statute the fact alternatively pleaded must be positively alleged, coupled with an averment of the pleador's belief of one or the other alternative so alleged.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED IN PART AND REVERSED AND REMANDED IN PART.

*J. F. Green* and *Robert A. Anthony* for St. Louis, Iron Mountain & Southern Railroad Company, Appellant.

(1)  The court erred in admitting any evidence for the reason that the petition fails to state a joint cause of action against the defendants.  McLendon v. Railroad, 119 Mo. App. 128; Meyers v. Railroad, 120 Mo. App. 288.  (2)  The court erred in refusing to give instructions in the nature of demurrers to the evidence asked by defendants at the close of plaintiff's evidence in chief, and at the close of all the evidence.  Evans v. Railroad, 222 Mo. 435; Ficklen & Son v. Railroad, 115 Mo. App. 633; Buffington & Lee v. Railroad, 118 Mo.

App. 476; 1 Elliott on Railroads, sec. 1480; 1 Hutchinson on Carriers, sec. 295; Densmore Commission Co. v. Railroad, 104 Wis. 563; Frolick Glass Co. v. Railroad, 138 Mich. 116; Nicholson v. Railroad, 124 S. W. 573; Hurst v. Railroad, 117 Mo. App. 25. (3) The plaintiff, as disclosed by the evidence, voluntarily loaded the stock in question in the small car furnished him at McClure, Ill., therefore instruction No. 4 prayed for by defendant, St. Louis Iron Mountain Railway Co. should have been given. Ficklen & Son v. Railroad, 115 Mo, App. 633.

*S. H. West, Wammack & Welborn* for St. Louis, Southwestern Railway Company, appellants.

(1) Plaintiff's petition in this cause is fatally defective. Nichols Co. v. Hubert, 150 Mo. 620; State to Use v. Hesselmeyer, 34 Mo. 76. (2) Plaintiff should have been non-suited because he failed to prove the negligence relied upon. Waldhier v. Railroad, 71 Mo. 514; Hurst v. Railroad, 117 Mo. App. 37; Ficklin v. Railroad, 115 Mo. App. 637; Schureman v. Railroad, 88 Mo. App. 183. (3) Defendants are not liable for injuries caused to the animals by defects in the car into which they were loaded, and instruction No. 4 should have been given. Myers v. Railroad, 90 Mo. 102; Newby v. Railroad, 19 Mo. App. 391; Atchison v. Railroad, 80 Mo. 213.

*J. R. Young* for respondent.

NIXON, P. J.—This is an action for damages in which the plaintiff was a shipper of live stock and the defendants were common carriers of freight. The claim is for damages for injuries to plaintiff's stock by reason of the defendants' negligence. Plaintiff obtained judgment for $400 and the defendants appealed to the St. Louis Court of Appeals. The case was transferred to this court and the parties have appeared and waived defect of jurisdiction.

The petition is as follows:   (Caption omitted.)

"Plaintiff states that defendants are both railroad corporations, owning, leasing and operating a line of railroad in and through Scott county, Missouri, with offices in said county where said defendants may be found and served; that defendants operate a line of railroad from Illmo, Mo., to East St. Louis, Illinois, and jointly use the same together with yards at Illmo, Mo.; that as such railroad corporations the defendants are common carriers.

"Plaintiff states that on the 15th day of January, 1908, defendant, St. Louis, Iron Mountain & Southern Railway Company, contracted with plaintiff to ship for plaintiff a lot of horses and mules from McClure, Illinois, to Clarendon, Arkansas; that said contract is evidenced by Bill of Lading hereto attached, marked 'exhibit A,' and made to constitute a part of this petition; that when defendant St. Louis, Iron Mountain & Southern Railway Company carried said consignment as far as Illmo, Mo., it delivered same to defendant St. Louis-Southwestern Railway Company and by agreement between said defendants said defendant St. Louis Southwestern Railway Company, undertook to complete said contract to carry said consignment to Clarendon, Arkansas. *That in evidence of said contract, the defendant St. Louis Southwestern Railway Company delivered to plaintiff their certain bill of lading, duly executed and signed, which is hereto attached, marked 'Exhibit B' and made to constitute a part of this petition.*   (The part in italics was stricken out by plaintiff at the close of the case.)

"Plaintiff states that defendants contracted to and were in duty bound as such common carriers to convey said consignment of live stock in safe and sound cars and in a safe and sound manner without unnecessary delay from said point, McClure, Illinois, to said point of destination, Clarendon, Arkansas, and then and there deliver said consignment to plaintiff in a safe and sound

condition except conditions that might arise from other causes than neglect on the part of defendants. But plaintiff states that defendants were wholly neglectful of their duties as common carriers in such behalf; that defendant, St. Louis, Iron Mountain & Southern Railway Company, carelessly and negligently loaded said consignment of live stock in an unsound, improper and unfit car and that said consignment was shipped in such car and that defendant, St. Louis Southwestern Railway Company, received said consignment and permitted same to remain in said unsound improper and unfit car; that said consignment was negligently and carelessly switched around by defendants on way to said point, Illmo, Mo., and on yards at Illmo, and were knocked down, trampled upon, beaten and bruised and mangled by the careless handling of these defendants, and when arrival was made at point of destination, Clarendon, Arkansas, said stock was in a badly damaged condition; that said consignment of live stock was unnecessarily detained at Illmo, Mo., from the afternoon of January 15, 1908, until between 10 and 11 o'clock of the following day during which time said stock was compelled to remain in the open winter weather without any shelter and were greatly damaged in consequence of such exposure.

"Plaintiff states that he is unable to determine the exact amount of liability to be attached to each defendant on account of said defendants being so closely connected in their business arrangements and on account of them having the same agent and jointly using the same yards at said point, Illmo, Mo., where the greatest damages was discovered; that both defendants were guilty of gross negligence and misconduct in handling said consignment of live stock.

"Plaintiff states that the entire consignment of live stock was damaged in the sum of two hundred dollars counting damage from exposure from standing out in the winter weather all night, and time and additional

expense in getting the stock partially back in condition and which damage it would be difficult to more specifically itemize; that one large bay mule was cut, bruised and mangled and damaged in the sum of $145; that one brown mule was hurt in the stifle joint and bruised in the ankle and damaged in the sum of $125; that one mare was bruised in the withers and damaged in the sum of $100; that one brown mule was bruised and mangled and damaged in the sum of $165; that one gray mule was bruised about body and sprained hock and damaged in the sum of $100; that one bay pacing horse had eye knocked out and was damaged in the sum of $100; that one gray mule had ankle bruised and was damaged in the sum of $70; that one valuable stud horse was scratched and damaged in the sum of $200; that all of said stock mentioned as being damaged was a part of said consignment and received the injuries aforesaid on account of said careless handling and misconduct of defendants in transporting same under the contract mentioned above and in violation of defendants' duties aforesaid.

"That plaintiff is damaged in the sum aggregate of $1200 and for which said sum plaintiff asks judgment and for costs."

The grounds of specific negligence set out in plaintiff's petition are as follows: "That defendant, St. Louis, Iron Mountain & Southern Railway Company, carelessly and negligently loaded said consignment of live stock in an unsound, improper and unfit car and that said consignment was shipped in such car and that defendant, St. Louis Southwestern Railway Company, received said consignment and permitted same to remain in said unsound, improper and unfit car; that said consignment was negligently and carelessly switched around by defendants on way to said point, Illmo, Mo., and on yards at Illmo, and were knocked down, trampled upon, beaten and bruised and mangled by the careless handling of these defendants, and when arrival

was made at point of destination, Clarendon, Arkansas, said stock was in a badly damaged condition; that said consignment of live stock was unnecessarily detained at Illmo, Mo., from the afternoon of January 15, 1908, until between 10 and 11 o'clock of the following day, during which time said stock was compelled to remain in open winter weather without any shelter and were greatly damaged in consequence of such exposure."

The defendants filed separate answers in which each denied liability, and the defendant, the St. Louis Southwestern Railway Company, set up as a defense the misjoinder of parties defendant as follows:

"Defendant further alleges that there is an improper joinder of defendants herein, in that this defendant is joined in this action with the St. Louis, Iron Mountain & Southern Railway Company, for the reason that its contract with the said plaintiff is a separate and distinct contract to transport plaintiff's property from Illmo, Missouri, to Clarendon, Arkansas, and that it is in no way connected with the shipment of said plaintiff's stock from McClure, Illinois, to Illmo, Missouri; that each of said companies entered into separate and distinct contracts with the said plaintiff relative to the shipment of said stock, and that no through rate or through bill of lading was issued to the said plaintiff, and that they cannot be held jointly liable for the damage occasioned to plaintiff's stock, if any."

On January 15, 1908, the plaintiff delivered to the defendant, St. Louis, Iron Mountain & Southern Railway Company, (hereinafter called "the Iron Mountain railway") at McClure, Illinois, a carload of live stock for shipment to Clarendon, Arkansas. The stock consisted of fourteen head of mules and six head of horses. The plaintiff received a bill of lading and a live stock contract from the said defendant for the transportation of said carload of stock. This was an interstate shipment in which the initial carrier, as we have seen, was the Iron Mountain railway. The stock was routed by

this defendant from McClure, Illinois, by way of Illmo, Missouri, to Clarendon, Arkansas, and plaintiff accompanied his carload of stock.

The evidence is uncontradicted that before the animals were loaded into the car at McClure, Mrs. Rockwell, the agent of the Iron Mountain railway at that point, told plaintiff that the car in which he proposed to ship the stock was not a suitable one in which to make the shipment and that if he would wait until the next day she would get him another car, but that plaintiff refused to wait and said he would repair the car and load into it, and did repair the car by nailing boards or slats on the inside of it. He bedded the car and loaded the stock himself. When the car containing plaintiff's stock arrived at Illmo, Missouri, which was only six or eight miles from McClure, it was switched onto the line of the defendant, St. Louis Southwestern Railway Company, (hereinafter called "the Southwestern railway") which at that point operated a connecting line with a station and stock-yards at Illmo. The car was in transit from McClure to Illmo some three hours and arrived about eight o'clock on the night of the 15th, and when it did arrive at Illmo was delivered to the defendant, the Southwestern railway, at its stock yards. In the usual operation of that railroad, the next train on which the carload of stock could have been sent out after arrival under the schedules upon which trains were run was eleven o'clock that night, and plaintiff requested that the stock be sent out on that train. After the stock had been switched around its yards by the defendant, the Southwestern railway, the car was ready to be attached to the train that was to carry it south, but when the trainmen of said defendant were about to send the car out, it being then about 10:30 p. m. on the night of January 15th, and while they were attempting to couple the car, they discovered that plaintiff's stock in the car was in very bad condition. On making an examination, they found the stock badly injured,

bruised and beaten up, with injuries on different parts: of the body, eyes injured, etc., and some of the wounds: were bleeding. Thereupon the agents of said defendant unloaded the stock and removed it to their stock yards: where it remained about twelve hours or until ten o'clock the next morning when the stock was loaded into a larger car and sent forward to Clarendon, Arkansas. The unloading and reloading of the stock was done by the defendant, Southwestern railway, on the plea that the stock was in such an injured and disabled condition that such transfer to a larger car became necessary to protect the plaintiff's property from further injuries. The transfer to the larger car and the delay it necessitated was not made with plaintiff's knowledge, but after it had been transferred he made no objection to the arrangement. Plaintiff, although he went with his stock from McClure to Illmo, testified that while the stock was damaged in the shipment, he did not know at what point it was damaged or on which line or by which defendant; and he further stated that his carload of stock did not receive any injuries of any kind after it left Illmo, or, between Illmo and Clarendon.

It will be recalled that among the defenses set up by the defendant, the Southwestern railway, was the misjoinder of parties defendant. The petition, as we have seen, alleges a joint liability, and the specific grounds of negligence charged against both defendants are (1) that the Iron Mountain railway "negligently and carelessly loaded said consignment of live stock in an unsound, improper and unfit car and that said consignment was shipped in such car and that defendant, St. Louis Southwestern Railway Company, received said consignment and permitted same to remain in said unsound, improper and unfit car;" (2) "that said consignment was negligently and carelessly switched around by defendants on way to said point, Illmo, Mo., and on yards at Illmo, and were knocked down, trampled upon, beaten and bruised and mangled by the

·careless handling of these defendants;" (3) "that said consignment of live stock was unnecessarily detained at Illmo, Mo., from the afternoon of January 15, 1908, until between 10 and 11 o'clock of the following day, during which time said stock was compelled to remain in open winter weather without any shelter and were greatly damaged in consequence of·such exposure." 

This case, as is seen, is based on a joint tort, and the cause of action cannot be supported by proof of a cause of action founded on separate torts of the alleged joint tortfeasors, but it is indispensable in order to sustain the joint action that there must have been such concurrent action between the defendants as to create a joint liability. In such case the difference between the allegations and the proof is not to be regarded as a mere variance, which is cured by verdict under the statute, but is a total failure of proof when the defect is raised as provided by statute. Consequently, in order for plaintiff to sustain his action against both defendants it became necessary for him to show by evidence that he had a joint cause of action against the defendants. [Meyers v. Railway Co., 120 Mo. App. 1. c. 292, 96 S. W. 737.]

One of the defenses set up in the answer of the Southwestern railway was that there was no joint action by the defendant companies; that each of said companies had entered into separate and distinct contracts with the plaintiff relative to the shipment of said stock, and that no through rate or through bill of lading was issued to the plaintiff, and that defendants cannot be jointly liable for the damages occasioned to plaintiff's stock, if any.

The evidence tended to show that defendants maintained joint stock yards at Illmo, Missouri, and they jointly used the same track from East St. Louis, Illinois, to Illmo. That McClure was on the Illinois division of the Iron Mountain and that the Southwestern had no local station on those rails but that Illmo was a station

on the line of the Iron Mountain. That the two defendants jointly used the same railroad track between East St. Louis and Illmo, but there was no evidence showing that they had any traffic contract with each other. Where carriers on connecting routes from associations and arrangements for the purpose of carrying goods or parcels through the whole line, they are, beyond question, partners, and each is responsible for any loss or injury to goods which may happen, in whatever part of the line it occurs. [Coates v. Express Co., 45 Mo. 238.] A common carrier may contract to carry beyond the end of its own line, and where several common carriers, each having its own line, associate and form a continuous line, and contract to carry goods through for an agreed price, which the shipper pays in one sum, and which the carriers divide among themselves, they are jointly and severally liable to the shipper, with whom they have contracted, for a loss taking place on any part of the whole line. [White Live Stock Com. Co. v. Railroad, 87 Mo. App. 330.] The evidence in this case, however, fails to show any traffic arrangement between the defendant carriers as to the shipment of plaintiff's stock that would make them jointly and severally liable for any injuries during transportation.

As herein previously stated, this was an interstate shipment, from McClure, Illinois, by way of Illmo, Missouri, to Clarendon, Arkansas, in which the defendant, Iron Mountain railway, was the initial carrier and the Southwestern railway the connecting carrier. Under the Interstate Commerce Act, the initial carrier was liable for any loss, damage or injury to plaintiff's stock caused by it or by any common carrier, railroad or transportation company to which such property was delivered or over whose lines such property might pass; such Interstate Commerce Act provided: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill

of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, . . ." Under the liabilities created by this Act of Congress, the defendant, Iron Mountain railway, having received the stock for shipment, became liable not only for damages caused by its own negligence but also for any damage to plaintiff's stock by the Southwestern railway, it being a connecting line over which the stock passed; and any damages that should have occurred to plaintiff's stock by the negligence of the defendant, Southwestern railway, under this Act, would render the defendants jointly liable to the plaintiff for such negligence. But neither by reason of the Interstate Commerce Act, the common law, or the statute of Missouri, was the defendant, Southwestern railway, vicariously liable for any injury caused to plaintiff's stock that occurred upon the line or by the acts of the defendant, Iron Mountain railway, before the stock came upon its line. So that the whole question as to the misjoinder of parties in this case is focused around the question whether the defendant, Southwestern railway, was guilty of any negligence causing damage to plaintiff's stock after it received the same. If this action is to be maintained on account of the joint liability of the defendant, the evidence must show that the Southwestern railway was guilty of negligence in the switching of the plaintiff's carload of stock at Illmo or unloading and reloading the same and an unreasonable detention in its stock yards at Illmo. As we have seen, the charge of specific negligence in the petition is the improper switching of the carload of stock at Illmo and that it was unnecessarily detained for some twelve hours during which time it remained in open winter weather causing great depreciation in value by reason thereof. We will now proceed to examine the

evidence to ascertain whether either of these charges are sustained and as to whether the defendant, Southwestern railway, was guilty of any negligence at Illmo, as charged in the petition, either in switching the car or improper detention of the stock.

The plaintiff himself makes the following statement as to what occurred in regard to the car at McClure: "Mrs. Rockwell, the agent of the Iron Mountain at McClure, called my attention to the fact that she would communicate with the train dispatcher and suggested to me that the car in which I proposed to ship my stock was not a suitable car and that she would get another one for me if I would wait until the next day. I decided to load my stock in that car as it was and did load it on that date. I am the man who nailed the boards on it. I saw the car before I put the stock in." The evidence further shows that this car was an unusually small car for the loading of stock; that it was only 32 feet 6 inches, inside measurement, in length, and 6 feet 10 inches in width, which is not standard and which is not large enough to handle ordinary shipments of stock. The evidence showed that the car would contain twenty head if the car was properly bedded and the stock was given the proper care by the shipper when he loaded the same. The car was also, in proportion, low in height and was not standard. The evidence for the defendants tended to show that on the bottom of the car was some 14 to 18 inches of bedding and also some saw-dust; that the bedding was in excess of what it should be some 12 inches; that a car of this kind, bedded in this manner, would be likely to cause the stock to fall down; that the car had grain doors, that is, the doors to hold grain in a car, and they had been nailed from the inside against the sides of the car giving it the appearance of being a box-car rather than a stock car, and these nails protruded in some places and projected on the inside as much as an inch, and the nails

were left in such a condition in the car that if the stock moved against them they would be cut and torn and caused to bleed and tending to mangle their flesh. There was a feed-trough in the car on the inside in addition to the twenty head of stock, and this trough ran along the entire width of the car and was lying at the bottom of the floor and fitted tightly to the end of the car. The evidence of the plaintiff, however, tended to show that there was no defective bedding and that no nails were left projecting inside the car. The evidence of the defendants tended to show that the stock was examined at Illmo before removal from the car on which it was originally shipped. The joint agent of the defendants at Illmo testified that he examined the stock on the morning of January 16th before it had been removed from the car in which it was originally shipped and found that the stock at that time was badly disabled, bruised and wounded; that some of the horses had their eyes injured and some of the mules had their ankles wounded and their eyes were swollen and bleeding and they were lame. For some unexplained reason, the plaintiff did not testify as to the condition of his stock at Illmo or as to it standing out in the weather. It will thus be seen that while plaintiff's petition alleges that his stock at McClure, Illinois, was loaded by the defendant, Iron Mountain railway, into an unsound, improper and unfit car, the evidence showed that he selected the car himself, and his evidence tended to show that the animals were not injured by reason of being in an unsafe car and he maintained throughout the trial that the car was sufficient. By accepting the car furnished rather than wait until a better one could be secured, he waived all right to complain of the injuries resulting from the kind of car which was furnished. He will certainly not be allowed to complain that he was not furnished a better car when another car was offered by defendant's agent and plaintiff would not permit such agent to procure another car for him. He chose the car in which the

stock was shipped, repaired it, bedded it and loaded his stock into it, and if the car was insufficient, it was his own act and he cannot hold the defendants responsible for the defects. [Ficklin & Son v. Railroad, 115 Mo. App. 633, 92 S. W. 347.] .

The allegation that the defendant, Southwestern railway, received the stock in an unfit car and permitted the same to remain in it is not supported, but is entirely disproved by the evidence. As soon as this company discovered the kind of car the animals were in, it proceeded to unload them and put them in a larger and more commodious car, and this was the cause of the delay of the stock at Illmo. It is not sufficient that the plaintiff show merely that there was a delay in order to render the defendants liable, but he must further show that the delay was occasioned by the carriers' negligence. [Ecton v. Railway Co., 125 Mo. App. 223, 102 S. W. 575; McCrary v. Railroad, 109 Mo. App. 567, 83 S. W. 82; Wright v. Railroad, 118 Mo. App. l. c. 396, 94 S. W. 555.] And defendant, Southwestern railway, cannot be convicted of negligence when it acted in good faith and protected plaintiff's property.

A further specific charge of negligence in the petition is that the defendants at Illmo negligently and carelessly switched the plaintiff's carload of stock in such a way as to cause them to be knocked down, bruised and mangled. The only evidence of damages from negligent handling and switching of the car is the condition in which the stock was found on arrival at Illmo and delivery to the Southwestern railway and after the car had been switched into the latter's stock yards. No evidence is offered by the plaintiff as to how the injuries occurred, or when, or where, but the evidence goes no farther than to show that the stock was in good condition when loaded at McClure and was discovered badly injured and damaged while in the stock yards at Illmo. As to how or where or by whose negligence the injuries were inflicted the evidence gives no answer. The

plaintiff himself, who was with the carload of stock, as we have stated, testified that he had no knowledge at what point or whereabouts along the road the stock was damaged; that he only knew the stock was damaged during the shipment. So we are left entirely in the dark as to whether the injuries to the stock took place by switching on the Iron Mountain railway or after the carload of stock had reached the stock yards of the Southwestern railway, or whether the injuries were the result of the negligence of the defendants, or either of them, or whether they were occasioned by the natural propensities of the stock, or the unfit car in which the animals were loaded. If plaintiff's stock was damaged by reason of the negligence or the failure of the Iron Mountain railway to safely transport the same from Mc-Clure to Illmo, as stated, the Southwestern railway would be in no wise responsible for such injuries, for it entered into no contract with the plaintiff for such transportation between said points and cannot be held under the law for the negligence or omission of the Iron Mountain railway on account of such negligent transportation of the stock; but, as stated, in order to maintain the joint liability of the defendants and sustain the verdict obtained by plaintiff for $400 on the charge of negligence, the burden was on the plaintiff to show that any damages received from switching was caused by the defendant, Southwestern railway, at Illmo; otherwise, there was no joint liability as alleged in his petition. A most careful examination of the testimony fails to disclose any negligence of the Southwestern railway in handing or switching this carload of stock, and the charge in plaintiff's petition that this defendant was guilty of such negligence is wholly unsupported by the evidence.

The other charge, as we have stated, of specific negligence is the detention of plaintiff's stock some twelve hours at Illmo, during which time, the petition claims, it was exposed to the winter weather without

shelter and greatly damaged in consequence of such exposure. The plaintiff's evidence sustaining this charge is to the effect that he desired to keep his stock out of the weather in order to get the same to destination in good shape. He testified: "I was damaged when they were turned loose over there in an open stock pen and not taken care of. I think they were left out in the open about twelve hours; I am not sure. It was sleeting, and windy weather." He further testified that by reason of the exposure the stock was damaged ten dollars a head. As we have previously stated, the petition alleged that the plaintiff's stock at the time it was loaded at McClure was negligently and carelessly loaded in an unsound, improper and unfit car. Under the rules of pleading and practice, this allegation of the petition is conclusive upon plaintiff so far as the trial of this case is concerned. A party will not be permitted on a trial to give evidence contradicting his pleadings; he must abide by the statements made in his own pleadings, and is absolutely concluded by the statements therein contained. [Weil v. Posten, 77 Mo. 284; Knoop v. Kelsey, 102 Mo. 291, 14 S. W. 110; Davis v. Bond, 75 Mo. App. 32.] The statements in the petition which are absolutely conclusive were substantiated by the testimony offered by the defendants. The evidence offered by the Southwestern railway tended to show that the condition of the car and the condition of the stock was such when it came into its possession that it was necessary, to protect the stock and protect plaintiff's rights, that it should be unloaded from the car in which it was received at Illmo and reloaded into a larger car. The plaintiff, although he was at Illmo during this time, was silent on the witness stand as to the reason why his stock was reloaded at Illmo into a larger car. The testimony of the Southwestern railway is uncontradicted that after the injuries to plaintiff's stock was discovered it became necessary to place the stock in a larger car; that the car in which the stock had been brought from

McClure was not fit to put stock in—not suitable for it —and that it would not have been possible for the Southwestern railway to have shipped the stock through to Clarendon, Arkansas, in the car in which it arrived without injuring the stock; that the stock at Illmo was in such a damaged condition that it became necessary in order that it might not become further damaged to unload it and reload it into another and larger car. Of course it necessarily follows that if this unloading and reloading at Illmo became necessary in order to protect plaintiff's stock from further injuries by reason of the defective car or by reason of the disabled condition the stock was in, such act would not be negligence on the part of the defendant, Southwestern railway. Further, the fact that it became necessary to unload the animals at Illmo, and if, in consequence, it was impossible to get them back on a car in time for them to leave on the next train, such act would not be negligence. If it handled the shipment in its customary trains in the usual and ordinary course of business, this would be all the law required. Being compelled to wait, there was no showing that the animals were not as well off in the pens as they would have been in the car; and there was no testimony showing that the animals were in any worse condition by reason of having stood in the pen from ten to twelve hours except the opinion of the plaintiff. There was no showing that the cold weather or exposure caused the stock to shrink in weight or become diseased in any way thereby.

The plaintiff makes this further statement in his petition: "Plaintiff states that he is unable to determine the exact amount of liability to be attached to each defendant on account of said defendants being so closely connected in their business arrangements and on account of them having the same agent and jointly using the same yards at said point, Illmo, Mo., where the greatest damage was discovered." This allegation was not sufficient to relieve the pleader of properly stat-

ing in his petition a cause of action, or to relieve him of the further burden of showing at the trial that the defendants were jointly responsible for the injuries to his stock in order to recover as to both defendants. And as an attempted statement of a fact in the alternative, it came short of the requirements of alternative pleading. Sec. 626, R. S. 1899, provides: "Either party may allege any fact or title alternatively, declaring his belief of one alternative or the other, and his ignorance whether it be the one or the other." Under this section it is seen that a fact may be alleged in the alternative by either party, but in order to bring such allegation within the statute, the fact alternatively pleaded must be positively alleged coupled with an averment of the pleader's belief of one or the other alternative so alleged. [Nichols v. Hubert. 150 Mo. 620, 51 S. W. 1031; State ex rel. v. Walbridge, 69 Mo. App. 657.] The petition wholly fails to comply with the requisites of alternative pleading as provided by the statute.

The evidence wholly fails to sustain the allegation of negligence on the part of the defendant, Southwestern railway, and the judgment as to said company is reversed. The judgment as to the defendant, Iron Mountain railway, is reversed and the cause remanded. All concur.