## JOHN BOEHM, Respondent, v. GENERAL ELECTRIC COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 4, 1913. Opinion Filed December 31, 1913.

1. NEGLIGENCE: Injury from Fall of Heavy Object: Contributory Negligence: Knowledge of Danger. In an action for personal injuries sustained by plaintiff, caused by a heavy mass of iron, which was being hoisted by defendant, falling over against a scaffold on which plaintiff was walking, precipitating him into a pit, evidence *held* to show that there was nothing to warn plaintiff that it was unsafe for him to pass over the scaffold, near which the iron was being hoisted.

2. MASTER AND SERVANT: Contributory Negligence: Choosing Unsafe Manner of Doing Work. Although a servant, of his own free will, chooses an unsafe manner of doing his work or using the master's appliances, when other and safer ways could have been employed, he may still recover for injuries sustained from such use, unless the way he chose was so dangerous that an ordinarily prudent man would not have chosen it.

3. NEGLIGENCE: Contributory Negligence: Presumptions. One who was working in a building in which defendant (a contractor) was moving a heavy mass of iron had the right to presume that defendant would exercise the degree of care

required of persons handling heavy objects near where others are working.

4. ———: Injury from Fall of Heavy Object: Sufficiency of Evidence. In an action for personal injuries sustained by plaintiff, caused by a heavy mass of iron, which was being hoisted by defendant, falling over against a scaffold on which plaintiff was walking, precipitating him into a pit, where it was shown that an eyebolt in the iron, to which the hoisting cable was attached, broke, evidence *held* to sustain a finding that defendant was negligent in attaching the cable to the eyebolt without testing it to determine whether it would bear the strain.

5. ACTION: Joint or Several Recovery. Where the petition charges a joint tort against several defendants, a recovery may be had against one defendant only, or against all.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Dawson & Garvin* for appellant.

(1) No negligence of defendants directly causing plaintiff's injury was shown, and the demurrer to the evidence should have been sustained as to both defendants at the close of plaintiff's case. Stanley v. United Ry. Co., 114 Mo. 606; Feary v. Railroad, 162 Mo. 75; Bohn v. Railroad, 106 Mo. 429; Brands v. St. Louis Car Co., 213 Mo. 698; Patton v. Railroad, 179 Fed. 530; Frye v. Railroad, 200 Mo. 398; Bowen v. Railroad, 95 Mo. 274; Abbott v. Mining Co., 112 Mo. App. 550; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202; Gibbons v. Steam Nav. Co., 175 Mass. 212; Baecker v. Railroad, 240 Mo. 507; Smith v. Bispham, 52 N. Y. Supr. Ct. 33. (a) The doctrine of *res ipsa loquitur* does not apply to a case like the one at bar. Gardner v. Railoard, 223 Mo. 389; Zachra v. Mfg. Co., 159 Mo. App. 96; Evans v. Railroad, 222 Mo. 435. (2) The demurrer to the evidence should have been sustained as to the defendant General Electric Com-

pany, who was not plaintiff's master or employer. Authorities cited to Point 1, supra. (a) The petition charges a joint tort and does not state facts sufficient to constitute a separate cause of action against this defendant. Otrich v. Railroad, 154 Mo. App. 430; De-Donato v. Morrison, 160 Mo. 581; Weist v. City of Phila., 200 Pa. 148. (3) In any case plaintiff's injury is the direct result of plaintiff's contributory negli-fence in voluntarily leaving a safe place and unneces-sarily and for his own convenience going on to the temporary scaffold with full knowledge of the situation—thereby assuming whatever risk there was of such an accident happening as did happen. King v. Railroad, 211 Mo. 1; Baecker v. Railroad, 240 Mo. 507; O'Brien v. Western Steel Co., 100 Mo. 182; Bohn v. Railroad, 106 Mo. 429; Kinney v. Corbin, 132 Pa. 347; Calvin v. Railroad, 162 Mass. 533; O'Hare v. O'Rourke Const. Co., 120 N. Y. Sup. 404; Ramona O. S. C. v. Tate, 12 Ind. 57; Burk v. Ed. Gen. Elec. Co., 89 How. 498; Smith v. Bispham, 52 N. Y. Supr. Ct. 33; Hamilton v. Railroad, 83 Ga. 346. (4) No instruction given on behalf of plaintiff limiting the case to specific acts of negligence alleged in the petition, but plaintiff's instructions authorized the jury to find for plaintiff on any ground whether stated in the petition or not. This is reversible error. Beave v. Transit Co., 212 Mo. 331. (5) The court's refusal to give instruction D 5 asked by defendant was further error for above reasons and also because it is the law. Beave v. Transit Co., supra; Bohn v. Railroad, 106 Mo. 429; Beebe v. Transit Co., 206 Mo. 419.

*Granville Hogan* and *Earl M. Pirkey* for respondent.

(1) A petition may allege the doing of negligent acts jointly by two or more defendants and a recovery had against where the proof establishes the connection

of but one defendant with the acts averred. Hutchinson v. Safety Gate Co., 247 Mo. 105; Winn v. Kansas City B. R. Co., 245 Mo. 412. A case may be reversed as to one defendant and affirmed as to another. Stotler v. Railroad Co., 200 Mo. 149. (2) A contractor and a subcontractor are respectively liable to their employees and to each other's employees where they have negligently injured them. Hutchinson v. Safety Gate Co., 247 Mo. 99; Clark v. Union Iron and Foundry Co., 234 Mo. 436.. (3) Parties must so conduct themselves as not to injure others who are in pursuit of their lawful business. A person in conducting his work or business owes a duty of ordinary care to those lawfully at or about him. Young v. Waters Pierce Oil Company, 185 Mo. 666; Sykes v. Railroad, 178 Mo. 712; O'Keefe v. Railroad, 108 Mo. App. 177; The Asbury Park, 144 Fed. 553. (4) As a general rule a man is not required to look for danger when he has no cause to anticipate danger or when danger does not exist except it be caused by the negligence of another. Crawford v. Stockyards Company, 215 Mo. 414. A person in peril from the negligence of another is not required to adopt the safest and best course to avoid injury, but is only required to act with ordinary prudence. Hull v. Thomson Transfer Company, 135 Mo. App. 120. If there are two ways for a servant to do an act, one more dangerous than the other, both of which are furnished by the master with the intention that the employee may use either, he is not negligent in choosing the more hazardous course. Hutchinson v. Safety Gate Co., 247 Mo. 116. Even where a servant of his own free will chooses an unsafe way when a safer way is at hand, he can recover, unless the way he chose is so glaringly dangerous that no prudent person would have chosen it. Rhea v. Railroad, 171 Mo. App. 160; Railroad v. Thompson, 199 Fed. 395; American Car and Foundry Co. v. Ruckle, 200 Fed. 47. (5) The assignment that the verdict is against the weight of the evidence

is an admission that there is sufficient evidence to support the verdict. Crawford v. Stockyards Co., 215 Mo. 402. (6) Nondirection is not error. If plaintiff's instruction on the measure of damages is correct he was not required to ask other instructions. Morgan v. Mulhall, 214 Mo. 451; State v. Conway, 241 Mo. 284; Tate v. Railroad, 159 Mo. App. 481.

REYNOLDS, P. J.—This is an action by plaintiff, respondent here, against the Union Electric Light & Power Company and the General Electric Company, to recover damages for personal injuries alleged to have resulted from the joint tort of the defendants. The petition charges that on a day named plaintiff, then in the service of the Union Electric Light & Power Company, and while discharging the duties of his employment, was at work in a building belonging to the Union Electric Light & Power Company, in which building at the time of the accident the General Electric Company was installing certain machinery; that at the time of the accident both defendants were engaged in hauling and moving a heavy piece of machinery, known as an armature or field, from one part of the building to the other, by means of a crane, equipped with cables; that the cables were attached to an eyebolt in the field and that while the defendants were engaged in moving and handling this field they negligently caused and permitted it to incline and lean sidewise while the eyebolt was held as before mentioned, and negligently, etc., caused the crane, thimble, cables, hook and eyebolt to sustain so much of the weight of the field that undue force was exerted upon the eyebolt, and that because of this undue force, and because it was brittle, defective and insufficient to bear the weight of the field, and insufficient and not reasonably safe for the purpose for which the defendants were using it, the eyebolt broke; that by reason of this breaking of the eyebolt, the armature or field fell from its inclined to a horizontal po-

sition on the floor upon which it was located and that in falling it struck a scaffold on which plaintiff was then standing, thereby causing him to be thrown into a pit, to his hurt and injury. It is further charged that this eyebolt, at the time it broke and for a long time next prior thereto, was brittle, defective, insufficient and not reasonably safe to sustain the weight, and that the defendants knew, or by the exercise of ordinary care, could have known such was the fact, and of the danger to plaintiff arising from using it in the manner mentioned; that they had used the eyebolt in inclining this field before they caused the field to incline, yet thereafter they negligently caused the field to incline or lean as before stated and negligently used it without protection, or notice of any kind to plaintiff, and negligently failed to warn plaintiff of the danger, or of the defectiveness or insufficiency of the eyebolt, and thereby directly caused plaintiff to be injured as above set out. Judgment is demanded against both defendants in the sum of $20,000.

Defendants answered separately, the Union Electric Company by a general denial, the General Electric Company by a general denial followed by the averment that the scaffold mentioned in the petition was merely a temporary covering laid over a part of the top of the hole or pit in and about which plaintiff had been working; that there was a permanent stairway coming out of the hole or pit on to a permanent gallery or passageway with other permanent passageways or roads provided for the use of persons leaving the pit and passing through and out of the engine room, which the plaintiff might and should have used, but with notice and knowledge of the work that was being done in removing this field or armature and of the manner in which it was being done and of the place where it was being done and its proximity to the temporary covering or scaffold, negligently, voluntarily and unnecessarily left the permanent galleries or pas-

sage ways and negligently climbed over the rail of the gallery and got upon and attempted to use this scaffold or temporary covering over the hole or pit as a passageway, and negligently proceeded toward where the field or armature was being handled, and that if he had remained where he was, or used the permanent galleries he would have been in no danger of injury, and that whatever injury plaintiff may have sustained was the result of his own negligence and carelessness. A reply was filed to this.

There was a verdict- and judgment in favor of the Union Electric Light & Power Company but against the General Electric Company, the latter in the sum of $2000. The plaintiff appealed from the judgment in favor of the Union Electric Company to the Supreme Court but afterwards dismissed that appeal. The General Electric Company, filing its motion for a new trial as well as one in arrest and excepting to all the adverse rulings and action of the court, duly perfected its appeal to this court.

The case has been argued and briefed very thoroughly by the respective counsel but its decision really lies in a very narrow compass.

It appears that plaintiff was in the employ of the Union Electric Light & Power Company in a building in St. Louis owned by that company. The General Electric Company was engaged in that building in lifting and loading upon a car a heavy piece of machinery called a field, or an armature, intending to remove it from the position it had been in. The field or armature was being hoisted by means of a crane and wire cables run through an eyebolt, which was set in the field. In loading it on the car the field was tilting over at an angle, so that the whole weight of this field, several tons, was thrown upon this eyebolt. The eyebolt broke off short at the eye, and the field, falling, struck the scaffold or boards upon which plaintiff was walking or standing at the time and threw him

down into a pit. Plaintiff sustained rather serious injuries. It appears that plaintiff was engaged in his usual occupation, a helper to a pipe fitter working about the plant, and in the course of his work was going from one part of the building to the other. He took this route over this platform or scaffold because it was a "short cut." It appears that there were permanent iron platforms and passageways, as stated in the answer of the General Electric Company, which plaintiff could have used, but it is in evidence that the temporary scaffold over this pit and which was covered with heavy planks or boards, had been in place there for about five or six weeks before the accident and was in common use by the men working there; that plaintiff had used it himself on several occasions, and that it was a short cut between the place at which plaintiff was working and the outlet of the building, to or from which he was walking. Plaintiff came up from the pit in which he had been working and stepped on this scaffold and started to walk across it. The field was then being lifted on to the car when, the eyebolt breaking, the weight of the field was thrown against the ends of the boards on the scaffold and the boards flying apart, plaintiff was thrown into the pit. He had been over this scaffold several times that day while the field was being handled; saw that it was being lifted, but apparently did not apprehend any danger either of its falling or, if falling, striking the platform of the scaffold. Nor did he hear any warning that there was any danger; heard no order to look out for it or to get away or under cover. Appellant introduced no testimony.

Reading the testimony with care, we find no evidence that plaintiff knew or had reason to believe that this way over this scaffold was dangerous, any more dangerous at that time than before. The fact that this heavy piece of machinery was being lifted near it was no notice of danger in itself; there was nothing about

it to indicate that it would fall, or, falling, that it would hit the scaffold or plaintiff. It was some feet away from it. Plaintiff was where he had a right to be and was not warned of any danger.

Counsel for appellant very strenuously argue that where there are two ways that a person can take, one safe and the other dangerous, if the wayfarer chooses to take the more dangerous one and is hurt, he cannot recover. That argument is of no force here. The evidence does not sustain the claim that plaintiff, having a safe and an unsafe way, chose the latter, knowing it was unsafe. There was nothing to warn him that the way he chose was unsafe. Nor is it correct to say that having two routes, the wayfarer in all cases selects the more dangerous one at his peril. That will depend on the facts in a given case.

In Rhea v. Missouri Pac. Ry. Co., 171 Mo. App. 160, l. c. 178, 156 S. W. 4, will be found a collection of authorities in support of the proposition that when a servant of his own free will chooses an unsafe manner of doing his work, or using his employer's appliances when other and safer ways are at hand, he may still recover for his injuries, unelss the way chosen was so dangerous that an ordinarily prudent man would not have chosen it. Another case in which the rule was invoked was that of Hodges v. Chambers, 171 Mo. App. 563, l. c. 570, 154 S. W. 429. There it is said that the plaintiff, "as a pedestrian, had as much right upon this driveway as did the defendant with his automobile, and the defendant owed to plaintiff the duty to exercise toward him, as a pedestrian upon this driveway, that degree of care which by our statute is imposed upon the owners or drivers of such vehicles." The same principle applies here in a measure. This plaintiff had a right to use this pathway. He had a right to presume that appellant would exercise that degree of care enjoined upon those engaged in such a work near

it that is required in handling heavy machinery in the vicinity of pasers-by.

There was nothing present to advise plaintiff that it was dangerous to take this passagewey. In the Hodges-Chambers case, supra, it is said, in answer to the claim that many cases hold that one cannot recover where he knowingly chooses a dangerous road or passageway when a safe one is at hand, that such cases do not apply for the reason that the driveway in question was a public highway and could only be said to have been dangerous when made so by the failure of the drivers of vehicles to exercise the care required of them by law. Although not quite analogous to the case before us, the principle announced in those cases is just as applicable to that at bar as to them, for the point is, that one must choose, knowing the danger. This plaintiff had a right to act upon the presumption that those who were moving this heavy piece of machinery would do so in a careful manner. The evidence almost without contradiction proved, certainly tended to prove, that the route plaintiff was following was one commonly used by the men working about this plant. It had never been found dangerous or unsafe for use by workmen passing from one part of the plant to another, and plaintiff had no reason to think, much less know, that it was dangerous. Moreover, if dangerous, it was made so by appellant. The only thing that made it dangerous upon this particular occasion was that at the time plaintiff was using it, this defendant, the General Electric Company, was handling a very heavy piece of machinery in close juxtaposition to it. It may be said to be dangeraus at all times for one to pass along a street, over or through which heavy bodies are being moved. That does not necessarily close the street to travel. The field was not on this passageway on which he was standing. How was he to suppose that even if it broke or fell, it would injure him? He was not going under it at the time, but did intend to

pass by it, as he had done before. He was near where it was being handled, but had a right to assume that defendant would do its work in a careful manner and that it had the means and appliances safely to handle this field or armature. Furthermore plaintiff had a right to assume that the armature itself was in such condition as to warrant defendant, the General Electric Company, in handling it in the manner and with the means by which at the time it was being handled. It cannot be charged against plaintiff that he had any reason to suppose that there was any weakness in the field or that he was in imminent danger by reason of that weakness or from the manner it was being handled. So that there was nothing in the fact that the defendant was handling this heavy mass of iron or steel in the vicinity of this passageway to render the use of the passageway so obviously unsafe or dangerous as to require plaintiff to avoid it. Nor can we see how it can be said, as a matter of law or fact, that plaintiff, supposing he knew the machinery as then and there handled would, even if falling, fall in such a manner as to endanger him, standing on the platform several feet away from it. He was not called upon to presume that, falling, it would hit the planks upon this scaffold and throw him into the pit. As far as this point is concerned, we are unable to see how it can be charged that having a safe and an unsafe way of passage, this plaintiff, at his own risk, had knowingly chosen the dangerous one on that occasion.

Counsel for appellant cite us, among other cases, to Baecker v. Missouri Pacific Ry. Co., 240 Mo. 507, 144 S. W. 803, King v. Wabash R. R. Co., 211 Mo. 1, 109 S. W. 671; Hirsch v. Freund Bros. Bread Co., 150 Mo. App. 162, 129 S. W. 1060; and Maupin v. Miller, 164 Mo. App. 149, 148 S. W. 141. We find nothing in any of these cases that sustains that claim. The facts in the cases on which the rule so clearly announced

179 App. 43

in the Hirsch case, supra, at page 174, rests are totally unlike those now before us.

We have stated that plaintiff had a right to rely upon appellant using at least reasonable care in handling this heavy weight near a way often used as a passage. He also had a right to presume that the armature and its eyebolt were reasonably safe for such handling; the eyebolt strong enough to bear the strain to which it was apt to be subjected.

That brings us to another proposition very earnestly argued by the learned counsel for appellant, namely, that there was no substantial evidence in the case upon which the jury were warranted in charging this appellant, the General Electric Company, with responsibility for the breakage of this eyebolt in the armature or field. We cannot agree to this. There was testimony from an expert in mechanics and on the proper and usual tests of the strength of materials, given in answer to a hypothetical question, that it was an easy matter to determine, before use, the tensile strength of any material and particularly of this eyebolt, the breaking of which caused the filed to fall. There is the further testimony of a witness, who was of the gang working about this place, that when this eyebolt broke, it was "a clean break," the eyebolt breaking off even; no fractures appeared, no hidden defects, that could be discovered by the eye on an inspection of it, such as fissures, cracks or blemishes. He further testified that the material of which this eyebolt was made was either wrought iron or "very common steel." The weight of this field, several tons, was thrown upon this eyebolt, at the end of which, as the name implies, there was a ring or an eye, through which the strands of the cable attached to the crane, by which the field was being moved, passed. When the field was titlted, as it was, its whole weight was upon this eye or ring of the eyebolt. The eyebolt gave way, snapped clean off at the eye, as we understand, possi-

bly at the surface of the field, under the weight, and the armature fell, and as the jury must have found, because of the weakness of the eyebolt.

The jury had a model of the premises as well as of this field before it, the model exhibiting the different parts being used by the witnesses in the course of their testimony, they pointing out the various places in the building, the position of the building, of the machinery, of the scaffold, and the position of plaintiff at the time of the accident. The jury must have seen and understood the situation very fully, much better than it is possible for us to do, and had the benefit of this testimony before it as to the exact situation at the time of the accident. They had evidence as to the eyebolt, of what made, how its strength could have been determined; of the strain to which it was subjected. They had a right to infer from the evidence that appellant, using it, could have and ought to have informed itself, before subjecting the eyebolt to the strain under which it was put on that occasion, that it would stand that strain. In brief, the jury had substantial evidence on which to determine that the eyebolt used on this occasion was not sufficient to sustain the strain placed upon it, and that this appellant should have known that. That finding was confirmed by the trial court. The doctrine *res ipsa loquitur* is not here invoked nor involved. But taken in connection with the testimony as to the material of which this eyebolt was composed, the fact that it broke as described and that it was within the power of appellant to have ascertained its tensile strength before using it, and it not appearing that any such test had been used, the jury had a right to infer that it was negligence on the part of this defendant to use it in the manner and for the purpose which it did, without making proper tests— that it failed to exercise reasonable care in providing a reasonably safe appliance.

The only remaining proposition earnestly argued by the learned counsel for appellant, is to the effect that the petition charges a joint tort and does not state facts sufficient to constitute a separate cause of action against this defendant. Otrich v. St. L., I. Mt. & S. Ry. Co., 154 Mo. App. 420, 134 S. W. 665, is cited in support of this proposition. The decision in that case does, in a measure,. support this claim, but unfortunately for the contention of the. learned counsel for appellant, that case, and on that very point, has been distinctly overruled by our Supreme Court in Hutchinson v. Safety Gate Co. et al., 247 Mo. 71, 1. c. 110; 152 S. W. 52. Granting that defendants were charged as joint tort feasors, as is held in the Hutchinson case, 1. c. 111, a recovery may be had against one only, or against all. In this view of the case, we do not consider it necessary to consider the other points presented.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.